CLEMENT M. SOULE et al.

*v.*

. THE CITY OF PASSAIC.

1. Where a municipality deliberately enters upon a scheme of drainage, in pursuance of which it will collect water from a large area, and, by artificial means, cast it upon private property, through which the land, from which the water is to be collected, would not otherwise be drained, it threatens a wrong, the commission of which equity will restrain by injunction.

2. That the property thus threatened is already lawfully subjected to a considerable burden in the drainage of other lands, is no justification for such additional imposition.

---

On final hearing on bill, answer and proofs.

*Mr. Thomas M. Moore,* for the complainants.

*Mr. G. P. Rust,* for the defendant.

THE CHANCELLOR.

The object of the bill is to have the defendant perpetually restrained from discharging surface-waters from a section of the city of Passaic known as "North Passaic," by means of drains, into a ditch which runs through the complainants'. lands.

The property of the complainants is a portion of a considerable tract of low, marshy land, over which the city of Passaic extends and through which it has laid out and, to some extent improved, streets. The evidence discloses that, for half a century or more, the Paterson plank road has run, from east to west, through this low land, and that formerly there were two vents for the water which accumulates upon the land in wet seasons—one, a ditch along the west side of the plank road, which, until it was closed up, ran into a small stream called Simmons's brook, and the other, a culvert under the Erie railway (which crosses the low tract east of the plank road) leading into a ditch, which runs through the complainants' property to a small culvert under a highway called Lexington avenue. Heretofore the complainants' ditch and the culvert under Lexington avenue have been of adequate capacity, save in exceptionally wet weather, to carry off all the water that has flowed to them. The complainants' father, recognizing this fact, underdrained his land to the ditch running through it, built a house upon the land and otherwise improved and occupied it, and such use and occupation have been continued by the complainants. A few years ago, in process of municipal improvement, Oak and Chestnut streets, two highways running westerly from the plank road and along the northerly side of the low land, were so graded as to close the outlet for the water to Simmons's brook. This stoppage caused water to accumulate west of the plank road, where it occasionally stagnated. To afford an outlet for such water, pipes were laid under and across Oak street, on the west side of the plank road, but, in process of time, they became clogged and ultimately entirely filled up. This plan failing, the city authorities now propose, by means of gutters, along and across the plank road, and ditches, to convey, not only the surface-water from the plank road and Chestnut and Oak streets, but also the water which from time to time accumulates

on the land west of the plank road, to the culvert under the rail-road and discharge it into the ditch which runs through the complainants' land. In wet seasons, the water thus discharged into the ditch, added to the water which the ditch was originally designed to carry off, because of the flatness of the land and the insufficient size of the culvert under Lexington avenue, will overflow the complainants' lands and be a source of continuing annoyance and repeated injury to them, not only by the flooding that will result therefrom, but also because the water itself will be contaminated with street filth.

The evidence does not establish that either the ditch through complainants' land, or the ditch along the west side of the plank road, was a natural water-course. Both ditches appear to have existed as long as the memory of the witnesses extend, and, from the character of the bog or morass, in which they were dug, to have been made to collect and give direction to water which otherwise would have spread over and lain upon the adjacent land. It does not appear, within the memory of any witness, that water collected on the west side of the plank road was discharged on the east side of that highway.

It is established in this state, that the mere incidental diversion of surface-water by a municipality, in grading and improving its streets, by which the land of an individual is damaged, does not cause an injury for which redress may be had. *Town of Union* v. *Durkes, 9 Vr. 21.* But where a municipality deliberately enters upon a scheme of drainage, in pursuance of which it will collect water from a large area, and, by artificial means, cast it upon private property, through which the land, from which the water is to be collected, would not otherwise be drained, it threatens a wrong, the commission of which equity may restrain by injunction. *Field* v. *West Orange, 9 Stew. Eq. 118; S. C. on appeal, 10 Stew. Eq. 600; Miller* v. *The Mayor &c. of Morristown, 2 Dick. Ch. Rep. 62; Gould Wat. §§ 271, 272.* That the property thus threatened is already lawfully subjected to a considerable burden in the drainage of other lands, is no justification for such additional imposition. *Noonan* v. *The City of Albany, 79 N. Y. 470.*

The complainants are entitled to the relief they ask.