In 1925 the Seven Oaks Company developed a tract of land in the southerly section of Orange, known as "Seven Oaks," paved its streets and sold its lots, upon which are now erected many handsome residences; the neighborhood is built up. To take care of the surface water of the development, *Page 129 
the city of Orange constructed a surface water sewer from the northern boundary of the development, Elmwood drive, southerly through Sylvan way and Mosswood avenue, being a continuous street, about fifteen hundred feet, and intakes to catch the water. From Seven Oaks, the water is carried northerly through a large pipe, across private property to Highland avenue, fifteen hundred feet and over, where it is deposited into a brook which flows over private property from Highland avenue to Reynolds Terrace, some nine hundred feet, where the brook empties into a culvert of a storm sewer connected with the city's drainage system. The distance is about four thousand one hundred feet and the fall from the head of the sewer in Seven Oaks to the culvert at Reynolds Terrace is forty-four feet — a low grade. The brook had its source about three hundred feet south of Highland avenue, but long ago that part below Highland avenue was filled up, closed. It formerly extended north of Reynolds Terrace, over the land of the complainants, and thence in a northerly direction, but that part was also filled in when the brook was diverted into the Reynolds Terrace storm sewer, some twenty and more years ago.
The brook and sewer drain an area of some one hundred and thirty acres and the flow is northward. The southerly boundary of the water shed is at Tremont avenue, the first cross street south of Elmwood drive. To this the city added the drainage of some twenty acres in Seven Oaks, the flow of which is southward, by extending the sewer eleven hundred and fifty feet in Mosswood avenue, to Haywood avenue, the next cross street. The natural drainage southward in the added territory is slight, but when the sewer was put in, the grade of Mosswood avenue was raised at the juncture of the two areas, Tremont avenue, so that the flow in the street and into the sewer southward is slightly more accelerated.
During heavy downpours, the culvert and the storm sewer are of insufficient capacity to carry the water of the brook, augmented by the surface drainage from Seven Oaks, and *Page 130 
the water overflows Reynolds Terrace and floods the premises of the complainants which are naturally in a low spot; formerly the location was swampy. The premises of the complainant, Herman C. Cassini, consist of a thirty-two-family modern apartment house, erected in 1927, on the easterly side of Carteret Place, three doors north of Reynolds Terrace, and he and his co-complainant, Anthony Cassini, own, severally, four six-family apartments, adjoining immediately to the north. In 1927 during two heavy showers the larger apartment house was flooded to a depth of five feet, causing considerable damage. In ordinary rains of two hours duration the premises are flooded two to three feet, and to protect the apartment the owner has surrounded it with a storm wall.
Tapping the foreign water shed and transporting the drainage to the brook brings the case within the well-established rule of law that "the public authorities have no right, by the construction of artificial drains in such streets to divert the water from where it would otherwise flow, and thereby collect it and cast it upon complainants' lands." Field v. West Orange, 36 N.J. Eq. 118; affirmed, 37 N.J. Eq. 600; Soule v. Passaic, 47 N.J. Eq. 28; Miller v. Morristown, Ibid. 62; Kehoe v. Rutherford,74 N.J. Law 659; Jerolaman v. Belleville, 90 N.J. Law 206.
The fact that the alien drainage water constitutes but fifteen per cent. of the entire drainage is no justification for the additional burden upon the menacing brook. Soule v. Passaic,supra.
The doctrine of the cited cases is applicable to all artificial drainage from Seven Oaks. The drainage is not an incidental diversion of surface water, due to grading the streets. The surface water from that cause would flow on the adjoining lands at a point fifteen hundred feet south of the brook and there percolate or evaporate, and some of it, perhaps, would reach the brook, for which there would be no redress. Union v. Durkes,38 N.J. Law 21. But here the clay, by the artificial means of its sewer, collects the surface water and by means of the concrete pipe carries and casts it in large *Page 131 
and mobile volume, and where it would not otherwise go, directly into the brook to the damage or threatened injury of the complainants' property. The case resembles Miller v.Morristown in facts and principles. There the water of the street fell naturally into the complainant's low land, and the damage occasioned by an increased flow, due to the town regrading, guttering and paving the streets was held not to be actionable. But intercepting the waters by means of a catch basin and culvert in front of the complainant's property and thereby casting it upon his land was enjoined as unlawful. One maygrade his property to suit his own convenience and the consequent diversion of surface water to the injury of another is not actionable; to divert it upon his lands by artificial means, to his damage, is remediable. Soule v. Passaic, supra.
It is argued by the city that the overflow is due to the clogging up of the culvert by debris, in heavy rain fall, and that it is not in duty bound to keep the culvert clear. The proposition of law is conceded on the authority of Murray RubberCo. v. Trenton, 103 N.J. Law 43, but the failure to keep the culvert clear of debris is not the ground of complaint. The proof is, that the culvert and sewer are too small for the additional load on the brook. The clogging up of the culvert is merely a contributing factor in the chain of causation. The actionable injury is the unlawful flooding of the brook, thereby overflowing the city's unequal culvert and sewer, and consequently flooding the complainants' premises to their damage — an injury that is ever threatening.
The city has an easy method of remedying the cause for complaint by enlarging the culvert and the Reynolds Terrace sewer to a point where it intercepts a main trunk some four or five hundred feet north of Reynolds Terrace and Carteret Place.
The complainants are entitled to an injunction, but it will be withheld until the city can make the necessary change, providing it signifies its willingness to do so and will proceed with all convenient speed. *Page 132