GOULD & EBERHARDT, INC., PLAINTIFF-RESPONDENT, v. CITY OF NEWARK, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

Argued December 18, 1950—Decided January 22, 1951.

*Mr. Charles Handler* argued the cause for appellant (*Mr. George B. Astley* on the brief).

*Mr. John J. Gaffey* argued the cause for respondent (*Messrs. Minard, Cooper, Gaffey & Webb,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. The plaintiff seeks to enjoin the further discharge of storm and surface waters upon its property from a storm sewer system constructed and maintained by the City of Newark. An injunction was granted by the Superior Court, Chancery Division, and the defendant's appeal to the Appellate Division is certified here on our own motion.

Prior to 1928, the city collected storm and surface drainage waters from a considerable area in the vicinity of the

point where Newark and the Towns of Irvington and Hillside meet and emptied it through an outlet pipe near the intersection of Chancellor Avenue and Wainright Street. Thence the water travelled across flat and somewhat swampy territory and emptied into two natural brooks which carried it across the plaintiff's land.

In 1928 the city constructed a surface drainage system throughout the area. Streets were laid out and paved, cement gutters constructed and catch basins installed which connect with storm water sewer pipes laid underneath the streets. Use of the old outlet pipe was discontinued and the water was conducted by the storm sewer to a new outlet at the intersection of Fabyan Place and Winans Avenue in Hillside. There the water emptied into a drainage ditch running for a short distance on and along the southerly line of the plaintiff's property.

Before undertaking the project, the city consulted the plaintiff company and outlined the proposed changes. The plaintiff, after considering the project, gave its assent in the following letter, dated April 26, 1928, and signed by its president:

"Referring to your call today, with reference to the proposed location of storm water sewer and outlet, from the property immediately east of ours and proposed to run through Fabyan Place, in a southerly direction to Winans & Paine Avenues, through a portion of Hillside Township and Irvington,—all as shown on map on file in the Bureau of Sewers, City Hall, Newark, and practically like the tracing sketch submitted today—this plan has our approval."

Relying on this, the city soon thereafter entered upon the work and expended on it a considerable sum of money. During the construction period, the plaintiff made no complaint about the project or indicated in any way that it was not being completed in accordance with the plans which had been previously submitted to and approved by the company's president. On the contrary, when the operation of the new sewer system resulted in drying up the two drainage ditches which had formerly trisected its land, the plaintiff filled in the beds and made use of the land thus reclaimed.

It was more than 19 years after the completion of the work before the plaintiff expressed any dissatisfaction with it. Then, in March, 1948, it instituted this action by filing a bill in Chancery to enjoin the city "from the further dumping of the storm waters * * * upon the lands of complainant."

Specifically, the plaintiff alleges that the natural drainage .ditch on the company's property into which the water from the storm sewer is discharged has been widened and its banks eroded by the greater amount of water diverted into it by the construction of the storm sewer. It claims also, at times of severe storm and melting of heavy snow, the ditch overflows on its land.

The city asserts it has committed no active wrong which can be the subject of injunction and that, in any event, the plaintiff should be estopped from claiming equitable relief because it gave its consent before the construction work was undertaken, acquiesced in the work itself and failed to protest for a long period after the completion of it.

It may be conceded that a municipality does not have the right to collect surface water and discharge it upon private property in greater quantity and with greater force than would occur from natural flow, so as to cause substantial injury. To do so constitutes active wrongdoing for which a court of equity will grant relief by way of injunction. *Cassini v. Orange,* 107 *N. J. Eq.* 128 (*Ch.* 1930) ; *Miller v. Morristown,* 47 *N. J. Eq.* 62 (*Ch.* 1890).

It is debatable whether the proof establishes any substantial injury. Measurements of the depth and width of the drainage ditch made in 1928 and again since the commencement of this action show only minor variations. The record shows that overflows are of rare occurrence and the plaintiff's own expert testified they extend southward and not over the plaintiff's lands.

The plaintiff's theory, accepted at its full value, presents the question whether the plaintiff is estopped from claiming equitable relief by reason of having assented to the construction project.

Estoppel cannot be interposed to protect an active wrongdoer. *N. J. Nat'l. Bank & Trust Co. v. Berkshire,* 9 *N. J. Misc.* 933 (*Ch.* 1931). The inquiry, therefore, arises whether or not this doctrine is invocable under the facts and circumstances presently confronting us. This depends upon whether the city was an active wrongdoer or was acting with and in reliance upon the consent and acquiescence of the plaintiff and thus was guilty of no active wrongdoing.

The city predicates its claim of an estoppel on the company's consent letter of April 26, 1928, but the plaintiff asserts the letter is not sufficiently definite and specific to permit the conclusion that the company thereby gave its approval to the work subsequently done and contends there is no proof that the city disclosed its scheme for catching and collecting all the surface waters over the entire area involved and dumping the same at one point upon the lands of the plaintiff.

Difficulty in the proof is encountered since the writer of the letter has been dead for over five years and his testimony, therefore, is unavailable. It is nevertheless quite clear that the letter referred to a storm water sewer running through Fabyan Place to Winans and Paine Avenues, the construction of which was commenced shortly after the receipt of it. This was the only development in this vicinity the letter could possibly have referred to and, in our opinion, it sufficiently conveyed the company's approval of the project now complained of.

True, the tracing sketch did not set forth in detail the entire plan but the letter did refer to a map on file and said: "all as shown on map on file in the Bureau of Sewers, City Hall, Newark, and practically like the tracing sketch submitted today." It seems fair to conclude the plaintiff was fully cognizant of the proposed plan, and if there be any doubt as to this issue, it must be received against the company because of its failure to protest in any way while the work was being carried out and for many years after its completion.

The benefits which accrued to the plaintiff—the drying up of the natural brooks which formerly flowed across its prop-

erty and the consequent reclaiming and filling in of the land by the company for profitable use—while not conclusive in themselves, suggest the reason for the plaintiff's acquiescence and its subsequent ratification of the completed project, thus fortifying the presumption, created by the surrounding facts, that the plaintiff intended to and did give its full approval.

The conclusion thus reached again is confirmed by the company's failure to make any suggestion, criticism or protest while construction was in progress or for more than 19 years after its completion. If there is merit to the assertion now advanced, that the actual construction did not conform to the plans submitted for approval, it at least should have been made at the time the work was done. On the contrary, the plaintiff stood silently by while large sums were expended in reliance upon its consent and in furtherance of the undertaking and it cannot now be heard to complain. The applicable doctrine is set forth in *Todd v. Exeter Land Co.*, 104 *N. J. Eq.* 431 (*E. & A.* 1928):

"The principle of equitable estoppel proceeds upon the ground that he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard to speak when he ought to be silent. A person is not permitted to deny a state of things which by his culpable silence he has led another to believe existed and who has acted accordingly upon that belief."

The plaintiff, having had knowledge of and having assented to the construction and having enjoyed the benefits of it for many years, is now estopped to complain. *Southard v. Morris Canal & Banking Co.*, 1 *N. J. Eq.* 518 (*Ch.* 1832); *Bridgewater v. Ocean City Ass'n.*, 85 *N. J. Eq.* 379 (*Ch.* 1915); affirmed, 88 *N. J. Eq.* 351 (*E. & A.* 1917); *Todd v. Exeter Land Co., supra.*

The judgment below is reversed and the injunction vacated.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.