St. Andrew's Evangelical Lutheran Church *v.*
Lower Providence Township, Appellant.

Argued November 21, 1963. Before Bell, C. J.,
Musmanno, Jones, Cohen, O'Brien and Roberts, JJ.

*Charles Potash,* with him *Cassin W. Craig,* and *Wisler, Pearlstine, Talone & Gerber,* for appellant.

*Richard S. Lowe,* with him *Fox, Differ, DiGiacomo & Lowe,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 17, 1964:
This is an appeal from the entry of a final decree by the Court of Common Pleas of Montgomery County sitting in Equity.

The facts, as found by the chancellor, are as follows:

The plaintiffs are St. Andrew's Evangelical Lutheran Church of Audubon, Pennsylvania, and James H. Austin and Sonia S. Austin, his wife, who reside at 61 Pheasant Lane, Audubon, Lower Providence Township, Montgomery County, Pennsylvania, James H. Austin being the minister of the plaintiff church. Earl Schrack and Vienna Schrack, his wife, the defendants, reside at 59 Sparrow Road, Audubon, which is situate across Sparrow Road from the property occupied by Mr. and Mrs. Austin. Lower Providence Township caused Sparrow Road (fifty feet in width) to be paved with a two lane cartway approximately 24 to 26 feet in width. As a result of this paving, the road was raised, in October of 1960, approximately 8 inches above the level of the Schrack property. As a result of

this improvement, the Schrack property was from time to time subjected to accumulations of surface waters. In order to alleviate the flooding of the Schrack property and to permit the surface water to flow from the Schrack property, and to permit the surface water to flow from the Schrack side of Sparrow Road to the Austin side, following the natural flow of water before the paving of Sparrow Road, the township placed a concrete drainage pipe, 6 inches in diameter, under the bed of Sparrow Road, in a generally North to South direction, approximately at right angles to the direction of Sparrow Road. Channels for the collection and dispersal of water were placed at the appropriate ends of the pipe. The pipe is 26 feet long and each end terminates 12 feet within the township's right of way.

Prior to the installation of the pipe, surface waters flowing from the Schrack property toward the parsonage property to the south flowed over a broad front along the rear portion of the latter property. The drainage pipe causes the surface waters to flow upon the Austin property in a concentrated flow, and has increased the quantity of surface waters discharged on the Austin property. By reason of the concentrated flow of surface waters, approximately 75 percent of the back yard of the parsonage is rendered swampy and mushy. The pipe drains not only the Schrack property, but also a part of the Apple Valley Development, a near by residential development. The pipe drains property on the north side of Sparrow Road for a distance of 135 feet to the east of the north terminus of the pipe, and for a distance of 55 feet to the west of the north terminus of the pipe, and for a distance of 160 feet to the north of the terminus of the pipe. The Austins' cesspool has filled up at an accelerated pace because of this increased and concentrated flow of water. Plaintiffs had a surface water problem prior to the installation of the pipe under Sparrow Road. How-

ever, the water problems have been increased and aggravated by the installation of the pipe. Closing of the pipe will result in flooding of the Schrack property.

From these facts the chancellor concluded that the plaintiffs were entitled to equitable relief and entered the following decree nisi: "And Now, January 11, 1963, the defendant Township is directed to abate the nuisance created on the plaintiff's premises by the unlawful concentration and discharge of surface waters thereon through and from the six inch pipe laid under the bed of Sparrow Road, terminating near or upon the plaintiff's premises, in a manner which will not accumulate surface waters upon the premises of the defendants, Earl Schrack and Vienna Schrack, in a greater quantity than accumulated thereon before the opening and improving of Sparrow Road."

The township filed exceptions to this decree which were dismissed by the court en banc and the decree nisi was entered as the final decree;[1] this appeal followed.

The first question into which our investigation takes us is one of jurisdiction. The appellants contend that the plaintiff-appellees have an adequate remedy at law and are therefore not entitled to equitable relief. The appellants argue that the plaintiffs-appellees could have brought an action of trespass or sought the aid of a jury of view as in condemnation cases. However, the trespass alleged would re-occur with each rainfall and no citation of authority is required for the proposition that equity may restrain a continuing trespass.

The appellant raises the issue that no substantial damage has been sustained by the plaintiffs-appellees, hence no cause of action is maintainable. However, the

---

[1] The decree was modified when made final by providing that the water flow should be abated in conformity to a plan prepared by the township engineers and submitted to the court.

chancellor unequivocally found that water was accumulating on the Austin property, the Austin cesspool has filled up at an accelerated rate, and that 75 percent of the St. Andrew's parsonage back yard was rendered "swampy and mushy". Our examination of the record discloses ample evidence upon which the chancellor could have based these findings, which certainly constitute substantial damage.

The appellants also contend that the evidence does not support the conclusions that the installation of the drainage pipe caused the increase in the quantity of water discharged on the plaintiffs-appellees' property or caused the Austin cesspool to fill up at an accelerated rate. These were facts which were found by the chancellor, and our study of the record reveals ample evidence upon which these findings can be substantiated. We have said many times that the findings of fact of a chancellor approved by the court en banc have the weight of a jury verdict and will not be disturbed on appeal if there is adequate evidence in the record to sustain those findings. *Rubin v. Lustro Tile Products Corp.,* 411 Pa. 549, 192 A. 2d 731 (1963), and cases cited therein.

The final point raised by the appellant township is that there is no evidence to support the conclusion by the chancellor that the installation of the drainage pipe created a nuisance. Again, the findings of the chancellor in this connection, which are amply supported by the evidence contained in the record, point up a situation by which a nuisance was created. In the case of *Rau v. Wilden Acres, Inc.,* 376 Pa. 493, 103 A. 2d 422 (1954), we emphatically stated on page 494: "A landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed

upon the neighbor's land in a diffused condition. One may make improvements upon his own land, especially in the development of urban property, grade it and build upon it, without liability for any incidental effect upon adjoining property even though there may result some additional flow of surface water thereon through a natural watercourse, but he may not, by artificial means, gather the water into a body and precipitate it upon his neighbor's property. Even a municipality, while not liable to a property owner for an increased flow of surface water over his land arising merely from changes in the character of the surface produced by the opening of streets and the building of houses in the ordinary and regular course of the expansion of the city, may not divert the water onto another's land through the medium of artifical channels." The drainage pipe installed by this municipality is surely an artificial channel which diverted water on to the parsonage property.

The final decree directing the abatement of the flow on to the property of Austin and others was a just and equitable solution to the problem created by the township.

Decree affirmed, costs on appellants.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I am fearful that the majority's determination does violence to our established procedures. First, no case has been cited that sanctions the resort to equity in a situation such as this in which the municipality is the defendant; second, all the cases cited in the briefs of both appellant and appellee, involving actions against municipalities for discharging water upon private property, were either suits in trespass or proceedings for the appointment of a board of view to assess damages for a taking; and third, the appellees' citation of *Weir v. Plymouth Borough,* 148 Pa. 566 (1892), as

authority for the issuance of a mandatory injunction against a municipality to abate a continuing trespass was either a gross misreading of the holding or a studied attempt to confuse the Court.

I do recognize that other jurisdictions concede that a court of equity will grant relief by way of injunction restraining a municipality from discharging surface water upon private property in greater quantity and with greater force than would occur from natural flow. See *Gould & Eberhardt v. City of Newark,* 6 N.J. 240, 78 A. 2d 77 (1951). However, my attention has not been directed to any injunctive decree which required that the waters be abated in conformity to a plan attached to the decree. I am certain that equity cannot compel a municipality to abate a nuisance in any prescribed manner.

I dissent.