## Davis *v.* Sulcowe, Appellant.

Argued September 30, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Raymond Kleiman,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for appellants.

*Irving R. Segal,* with him *Ira P. Tiger,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

*M. H. Goldstein, Michael Brodie,* and *Goldstein and Barkan,* for Pennsylvania AFL-CIO under Rule 65.

OPINION BY MR. JUSTICE O'BRIEN, December 3, 1964:

This appeal is from the final decree enjoining the defendants and their successors in office from enforcing any of the provisions of the Act of September 15, 1961, P. L. 1313, 43 P.S. §333.1 et seq., known as The Minimum Wage Act of 1961, against proprietary nursing homes.

Appellee, the owner and operator of a nursing home, filed this action in equity for injunctive relief which was granted preliminarily and the decree was made permanent after final adjudication.

The question presented involves the interpretation of a provision of the Act as applied to proprietary nursing homes. The Act provides that "Every employer shall pay wages at a rate of not less than one ($1.00) dollar an hour to every employe in any occupation except as may otherwise be prescribed in this act".[1] Appellants maintain that the appellee is required to pay wages of not less than the minimum rate as he is not exempt under the Act. The portion of the Act in dispute is "Section 3. Definitions as used in this Act . . . (6) 'Employe' includes any individual employed by an employer, but shall not include any individual: . . . (j) employed by a non-profit hospital or non-profit nursing home, a religious or charitable organization or an institution engaged in the care of the mentally deficient, the aged or infirm".[2]

The chancellor found as a fact that the appellee's nursing home is an institution which cares for aged, bedfast and infirm persons and is licensed by the Commonwealth of Pennsylvania. He also found as a fact that there is no difference between proprietary nursing homes and non-profit nursing homes in so far as relationship with employes, type of person employed, or collective bargaining power of employes is concerned.

---

[1] §5(a).

[2] 43 P.S. §333.3.

The findings of fact by a chancellor approved by the court en banc have the weight of a jury verdict and will not be disturbed on appeal if there is adequate evidence in the record to sustain those findings. *St. Andrews Ev. L. Church v. L. Providence Twp.*, 414 Pa. 40, 198 A. 2d 860 (1964); *Rubin v. Lustro Tile Products Corp.*, 411 Pa. 549, 192 A. 2d 731 (1963), and cases cited therein.[3] There is ample evidence in the record to sustain the findings.

The uncontradicted evidence clearly reveals that appellee's nursing home, as other proprietary nursing homes, care for the aged or infirm and they are institutions.[4]

Appellants contend that proprietary nursing homes are not exempt under the provision of the Act requiring the minimum rate of wages of not less than one ($1.00) dollar an hour for every employe in any occupation covered by the Act. Appellants argue that the Act of 1961 is remedial legislation and must be broadly construed so as to benefit the public interests. The Act is intended to supplement and enlarge the scope of minimum wage protection which was originally afforded only to women and minors under the Minimum Wage Act of May 27, 1937, P. L. 917, 43 P.S. §331 et seq. Therefore, any section granting exemptions under the Act must be strictly construed against those claiming exemption. The remedial legislation of the provision under consideration is for the benefit and protection of those persons employed by proprietary nursing homes and those affected thereby who are not in a class on a level of equality in bargaining with

---

[3] Counsel by stipulation waived argument on exceptions.

[4] See Act of 1953, June 29, P. L. 300, §2, 62 P.S. §2562; Act of 1951, April 6, P. L. 68, §1 and Act of 1952, January 14, P. L. (1951) 1964, §1 repealed by Act of 1963, August 8, P. L. 595, §10 and §1, 71 P.S. §775.1 et seq. Also, *Comm. of Pa., Dept. of Welfare v. Garland*, 393 Pa. 45, 52, 142 A. 2d 14 (1958).

their employers in regard to minimum fair wage standards and "freedom of contract" as exists for employes of other industries. The absence of minimum fair wage rates for employes constitutes a serious form of unfair competition against other employers and reduces the purchasing power of the workers and the stability of industry is threatened which, with all of the attendant circumstances, requires the exercise of the police power of the Commonwealth, for the public interest, health and well-being of the community. The legislature in enacting this law, stated that to be the purpose of the legislation. An examination of the Act of 1961 reveals that there are a great many exceptions to the minimum rate of wage requirement. The appellee contends that he and the other proprietary nursing homes as institutions are exempt by reason of the provision of §3(6)(j).

In addition to the legislative intent, appellants urge that the Statutory Construction Act should be resorted to and followed in determining the legislative intent.[5] It is argued that when the Act of 1961 is construed within the framework of §51 of the Statutory

---

[5] Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. 551, §51, provides: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subject; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

Construction Act, the meaning of the controversial portion of the Minimum Wage Act becomes clear in its denial of exemption to proprietary nursing homes.

Appellants also argue for the application of the doctrine of ejusdem generis in order to arrive at a proper interpretation of §3(6)(j) of the Act.

The arguments set forth by the appellants are all valid if there is a conflict in the terms of the provision, or an obscurity exists, or the meaning cannot be ascertained by a reading of the section. If the provision is not clear, it is necessary to apply properly the legislative intent with the aid of the Statutory Construction Act, and to apply the doctrine of ejusdem generis, if proper to do so. On the other hand, if the meaning is clear, there is no need for such procedure. We said in *Biddle Appeal,* 390 Pa. 460, 135 A. 2d 915 (1957) : "The language of the Act requires no rationalizing. Rather, what we quoted with approval in Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 645, 40 A. 2d 30, from 25 R.C.L. Sec. 217, p. 961, is apposite: 'The intention and meaning of the Legislature must primarily be determined from the language of the statute itself and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.' "

And again, to like effect, we said in *S. W. Delaware Co. Mun. Auth. v. Aston Twp.,* 413 Pa. 526, 198 A. 2d 867 (1964) : "In our view, the Statutory Construction Act is inapplicable and resort thereto distorts and perverts the clearly expressed legislative intent of both the School Code and the Authorities Act. In Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 645, 40 A. 2d 30, this Court approved the following rule: ' "*When the language of a statute is plain and un-*

*ambiguous and conveys a clear and definite meaning,
there is no occasion for resorting to the rules of statu-
tory interpretation and construction; the statute must
be given its plain and obvious meaning . . .*": 25 R.C.L.
Sec. 217, p. 961.' (Emphasis supplied) Such rule has
been consistently followed: Lancaster City Ordinance
Case, 383 Pa. 471, 474, 119 A. 2d 307; Biddle Appeal,
390 Pa. 460, 466, 135 A. 2d 915; Eck v. Williamsport
School District, 197 Pa. Superior Ct. 591, 596, 180 A.
2d 79. In fact, the Statutory Construction Act itself
(§51, 46 P.S. §551) provides that the 'object of all in-
terpretation and construction of laws is to ascertain
and effectuate the intention of the legislature'."

The provision of the Act excepting proprietary
nursing homes is clear. It is true the section under
consideration could, with some slight change of punc-
tuation and word change and arrangement, be made
to express the meaning contended for by the appellants.
We cannot, however, tamper with the grammatical
structure of a paragraph to achieve a result at vari-
ance with its clear meaning or even to rewrite it to
express the same thought in a more literate style.[6] We
must not wander or grope to find means to interpret
that which does not possess an arcane meaning. We
do not deal with esoteric language in construing stat-
utes. We deal with language as it is commonly used
and understood in its every day use.

Were we to accept the position of the appellants and
hold that "an institution engaged in the care of the
mentally deficient, the aged or infirm" as general
words following a specific enumeration of persons or
things as "a non-profit hospital or non-profit nursing
home" as applying only to persons or things of the
same general kind or class as those specifically men-

---

[6] A transposition of words and clauses may be resorted to
where a sentence is without meaning as it stands. Act of 1937,
May 28, P. L. 1019, §53, 46 P.S. §553.

tioned, would be to place a strained, unreasonable and unnatural interpretation on the words as used in the context of this paragraph. (§3(6)(j)). To warrant an application of the rule "the persons or things" must be reasonably capable of classification as the same general kind or class as those specifically mentioned. The words as commonly used and their arrangement and punctuation must not be distorted in order to bring the rule of ejusdem generis into operation. In the case of *Butler Fair & Ag. Assn. v. Butler Sch. District*, 389 Pa. 169, 132 A. 2d 214 (1957): "The Statutory Construction Act of 1937, supra, §33, provides: 'General words shall be construed to take their meanings and be restricted by preceding particular words'. The late President Judge RICE, speaking for the Court, in Corry v. The Corry Chair Co., 18 Pa. Superior Ct. 271, 277, said: 'The general word which follows particular and specific words of the same nature as itself often takes its meaning from them, and often is presumed to be restricted to the same genus as those words, or, in other words, as comprehending only things of the same kind as those designated by them, unless there is something to show that a wider sense was intended: Endlich on Interpretation of Statutes, sec. 405.'

"In Frederick's Estate, 333 Pa. 327, 331, 5 A. 2d 91, it was stated: 'General expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions: Derk v. Zerbe Twp., 322 Pa. 350, 185 A. 647.' " See also *Com. v. Randall*, 183 Pa. Superior Ct. 603, 133 A. 2d 276 (1957) pages 613, 614.

We see no necessity for the application of any of the preceding rules of construction, for the reason that the language of §3(6)(j) exempts the appellee's nursing and convalescent home and other proprietary nursing homes as institutions engaged in the care of the aged or infirm,

The appellee raised the question of the constitutionality of the statute which we need not consider under the circumstances, since we have decided the case on other grounds.

Decree affirmed. Costs on appellants.

Mr. Justice COHEN and Mr. Justice EAGEN dissent.