## Brahm v. Township of McCandless

Before McKenna and Wessel, JJ.

*James W. Dunn, Jr.*, for exceptant.

*Ralph H. German*, contra.

McKENNA, J., September 27, 1967.—This case is before us on exceptions filed by defendant on March 16, 1967, to the adjudication which was entered of record on March 10, 1967.

The adjudication contains a detailed statement of the findings of facts. In summary, they are these:

Plaintiffs are owners of 11 lots in Windsor Place Plan No. 1, in McCandless Township, Allegheny County, Pa. The same is recorded in the office of the recorder of deeds for said county in plan book vol. 69, pp. 66 and 67.

Four of said lots front on Regency Drive and seven on Balmoral. These streets run east, west, Regency being to the north and Balmoral to the south.

Defendant is a first class township, incorporated under the laws of Pennsylvania.

There exists in favor of defendant an easement 20 feet wide, running east-west between Regency and Balmoral. This is for a "sewer and utility right-of-way". It runs along the rear of each of the lots here involved.

To the east beyond the properties of plaintiffs, the ditch or sewer is enclosed, that is, it is piped, and sod or grass grows over it. In this location it is invisible and inoffensive. The same situation exists to the west of the subject lots. Between the eastern boundary of the easternmost lot and the western boundary of the lot farthest to the west, the ditch is not enclosed. It is open. The chancellor found that it constituted a nuisance. He directed that it be enclosed as in other areas.

Plaintiffs' homes were constructed in 1960 and 1961. At that time, the easement was being used only to the extent of six feet. Thus, it affected each of the lots herein described for a distance of only three feet.

In 1962, the ditch was dredged and shaped by defendant without plaintiffs' consent. This dredging helped to alleviate a flooding problem which existed on lots nos. 50 and 51 in the Windsor Place Plan No. 1. These are not involved in the case at bar. They are located to the east of plaintiffs' properties.

Between 1962 and 1965, the Windsor Place Plan was further expanded with the construction of new homes. In 1965, a large department store and asphalt parking lot were constructed in the vicinity by May Company (Kaufmann's) on ground higher in elevation than that of plaintiffs.

The chancellor found that the increased use of the right-of-way created a nuisance to the landowners along whose lots the sewer ran in an unenclosed condition. He found that the situation created a safety hazard, as there was a risk that small children might fall into the ditch or even into the pipes that led the sewer underground to the east and to the west of plaintiffs' lots. He also found that a health hazard existed as the sewer in its present condition attracts rodents and other pests.

Defendant's first exception is to the court's finding of fact no. 9, that in 1962 the ditch was dredged and shaped without plaintiffs' consent. The purpose of this was to alleviate a flooding problem in areas other than the property here involved.

It is defendant's contention that there was a sharp conflict of testimony on this point and that township witnesses denied that any work was done on the ditch by the township prior to 1965. This exception must be denied. The record indicates that the township did dredge and shape the hollow without plaintiffs' consent. It also shows that dredging was performed in 1962. Therefore, finding of fact no. 9 is supported by the testimony of plaintiffs' witnesses which the court believed.

Defendant's second exception is to the court's finding of fact no. 16, as follows:

"16. This condition presents a safety hazard as no safeguards have been provided to prevent children from entering the pipe. Both sections of the pipe are

inadequately barricaded. There is a danger that children may enter the pipe and suffer injury".

This, too, must be denied. Pictures offered in evidence at the trial indicate that the unenclosed trench is a safety hazard. There is testimony to the effect that children play in the area and that it would be quite easy for a child to enter the pipe at either end of the open ditch and become injured. This in uncontradicted. The danger exists. It can be alleviated only by abatement through enclosure. It is no answer to this court to say, as argued by defendant, that the screening of a proved dangerous condition would create a greater risk of harm. The answer here is clearly one of total prevention, if possible, and not the choice of the lesser of two evils. Since total prevention is possible by enclosure, this exception is denied.

The third exception is to finding of fact no. 17. This finding of the court states:

"A health hazard exists because the accumulation of debris discharged through the sewer pipes into the ditch tends to attract rodents and other pests".

Defendant contends that there is no showing of any actual health hazard and that the presence of pests is inevitable in streams and creeks. This exception is denied. A health hazard exists because of the accumulation of debris which tends to attract rodents and pests. The pictures vividly illustrate the mass accumulation of debris. The testimony also indicates this area to be a basin of stagnant water. Pests have been observed in the ditch since 1965. These facts support the finding by this court of the existence of a health hazard. Defendant's contention that no actual hazard exists is without merit.

Defendant's fourth exception is to the court's conclusion of law no. 2, which states:

"2. The expansion of the open drainage ditch by defendant constitutes a nuisance to the health and

safety of the abutting property owners, and must be abated".

The law defines nuisance as an "unreasonable, unwarrantable or unlawful use of property which causes injury, damage, hurt, inconvenience, annoyance or discomfort to another in the legitimate enjoyment of his reasonable rights of persons or property": Fontanella v. Leonetti, 33 D. & C. 2d 73, 84 (1964).

Defendant contends that this is a natural watercourse and that drainage ditches of this nature are an accepted method of drainage. Defendant likewise contends that this area cannot be classified as a nuisance simply because of the flowing water. These contentions are unsupported. As the adjudication states, a drainage pipe of the nature installed here is considered an "artificial channel". See St. Andrews Evan. Lutheran Church v. L. Providence Township, 414 Pa. 40 (1964). The artificial construction used here diverted the water onto plaintiffs' land. The change was a "drastic expansion of the drainage area". The contention that this court is classifying the drainage area a nuisance simply because of the existence of flowing water is erroneous. The area is a nuisance because of the health and safety hazards discussed above. Viewed in this light, the label "nuisance" is appropriate.

The contention of defendant that plaintiffs purchased their homes with full knowledge of a 20-foot easement and cannot complain that a nuisance exists now that the total land area of the easement is being utilized, was properly answered in the adjudication as follows:

"It is no answer to plaintiffs' Complaint for defendant to assert that the easement is twenty feet wide and therefore the existing use is within the grant. The creation of an easement twenty feet wide does

not give to the grantee unlimited rights within its boundaries". See Taylor v. Heffner, 359 Pa. 157, 163 (1948); Woessner v. Wible, 107 Pitts. L. J. 323 (1959).

The easement was a 20-foot grant. It was not, however, a grant to expand the drainage area to create a health and safety hazard. Furthermore, it is quite clear that the increased size of the area constituted a nuisance in the easement area which placed a tremenlous burden upon the servient tenement, a burden which the township, as dominant tenement owner, had no legal right to impose.

The fifth exception is to conclusion of law no. 4, reading as follows:

"The benefit of restoration will equal the value of the damages arising from the nuisance as it now exists".

By this determination, the chancellor no doubt intended to deny to plaintiffs their claim for damages. However, defendant has excepted to the conclusion on the ground that the damages were not proved or that, if proved, they would not equal the benefit to be bestowed on plaintiffs by the enclosure which the chancellor ordered. Therefore, the township asks that plaintiffs be directed to pay all or part of the cost of the construction.

The ditch must be enclosed. There is no other solution to the problem. The cost must be borne by the township since it created the condition which must be remedied. Plaintiffs would have been content had the area been left in the condition it was in prior to the enlargement of it by the township.

We affirm the chancellor's denial of money damages to plaintiffs, and his refusal to permit the township to assess the cost of the improvement against plaintiffs. The exception is dismissed.

Defendant in its sixth and final exception contends that the court erred in directing defendant to abate the use of the easement for surface waters. It is contended that this decree deprives the township of a right given to it by the legislature. An examination of the right vested in the township by the legislature shows that this is not the case. The right conferred upon defendant is, as defendant states, "to decide upon the extent and type of drainage facilities which shall be installed within the municipality". This decree does not impinge upon this right. It orders the abatement of a nuisance. It cannot be presumed that the legislature has vested municipalities with the power to violate individual property rights by the erection of drainage systems which can be legally classified as nuisances. When the legislature grants the right to install drainage facilities, it is implied that property owners will not be deprived of fundamental rights of use and enjoyment of their property in the process. Accordingly, the exception is denied.

## DECREE

Now, September 27, 1967, on consideration of exceptions to the decree nisi filed herein, it is ordered and decreed as follows:

That said exceptions be and they are hereby dismissed.

That defendant's use of the 20-foot easement as herein described, for the purpose of discharging surface waters, shall be abated. Defendant shall assume the cost of enclosing the ditch in accordance with accepted engineering standards so that the same will conform to the existing easement.

Plaintiffs' request for money damages arising from the nuisance is denied.

Each party shall bear his own costs.