Wiegand *v.* Wiegand, Appellant.

Argued April 11, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*George C. Diamantopulos,* for appellant.

*John W. Campbell, Jr.,* for appellee.

OPINION BY SPAULDING, J., September 19, 1973:

Appellant Myron Paul Wiegand appeals from an order of the Court of Common Pleas of Allegheny County directing him to pay counsel fees, costs and expenses in this divorce action.

The facts are undisputed. Appellee Sara Wiegand filed a complaint in divorce a.m.e.t., a petition for alimony, and an initial petition for alimony pendente lite, counsel fees and expenses. On August 14, 1967, an order was entered requiring appellant to pay $875 per month alimony pendente lite and $250 preliminary counsel fees. Subsequently, appellee filed several other petitions for additional counsel fees and

costs and for continued or increased alimony pendente lite. Appellant filed answers to these pleadings and a counterclaim seeking divorce a.v.m. on the grounds of adultery, indignities to the person, or desertion. After several hearings on the various petitions, the lower court entered an order on March 10, 1972, the subject of this appeal, which required appellant to pay $5,000 counsel fees and $82.20 costs.

There are no children resulting from this marriage. Appellee has received about $50,000 in alimony pendente lite from the date of the initial order to March 10, 1972. She also admits having received additional monies from appellant of approximately $100,000,[1] but contends in her brief that these payments were "either gifts or the result of business ventures entered into by the parties". Appellee testified that she has spent all of these funds and is now destitute.

The parties have confined their arguments to two related issues: whether the amount awarded for counsel fees is excessive under the circumstances, and whether the court below erred in refusing to allow cross-examination of appellee as to how she had disbursed the money appellant provided and as to whether she had other funds comprising her separate estate. Neither of these questions is discussed here as there is an additional issue which is controlling.

We are compelled to consider whether, in light of the adoption of the Equality of Rights Amendment to the Pennsylvania Constitution,[2] §§11 and 46 of The Divorce Law, Act of May 2, 1929, P. L. 1237, as amended, 23 P.S. §§11 and 46, providing respectively that wives, *but not husbands,* may obtain divorces from bed and board and be allowed reasonable alimony pendente

---

[1] Appellant contends that the total amount paid to appellee was $167,500, rather than the $150,000 admitted by appellee.

[2] Pa. Const., Article One, §27 (Adopted May 18, 1971).

lite, counsel fees, and costs in a divorce action,[3] still pass constitutional muster. This question is one of a number of constitutional problems presented by the Amendment.[4] We have recently dealt with the same question regarding only §46 of the Divorce Law, in the case of *Henderson v. Henderson*, 224 Pa. Superior Ct. 182, 303 A. 2d 843 (1973), where the constitutionality of that section was upheld by a divided six-man Court. The full Court is now properly presented with the issue, including the constitutionality of §11, as well as §46, of the Act.

The Amendment provides that: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."[5]  Since §§11 and 46 afford rights exclusively to females, the rights of males in Pennsyl-

---

[3] These sections read as follows: §11 "Upon complaint and due proof thereof, *it shall be lawful for a wife to obtain a divorce from bed and board*, whenever it shall be judged in the manner hereinafter provided in cases of divorce, that *her husband has*: (a) Maliciously abandoned his family; or (b) Maliciously turned her out of doors; or (c) By cruel and barbarous treatment endangered her life; or (d) Offered such indignities to her person as to render her condition intolerable and life burdensome; or (e) Committed adultery." (Emphasis added.)

§46 "In case of divorce from the bonds of matrimony or bed and board, the court may, upon petition, in proper cases, *allow a wife reasonable alimony pendente lite and reasonable counsel fees and expenses*. If at any time, either before or after a final decree has been entered divorcing the parties, the husband is in arrears . . . , the wife . . . may, by affidavit of default, upon praecipe of the prothonotary, obtain a judgment for such arrearages." (Emphasis added.)

[4] See our decision in *Commonwealth ex rel. Lukens v. Lukens*, infra, upholding the constitutionality of our support statutes.

[5] Compare with Section 1 of the Proposed Equal Rights Amendment to the United States Constitution, H.R.J. Res. 208, 92nd Cong., 1st Sess. (1971) ; S.J. Res. 8, 92nd Cong., 1st Sess. (1971), stating: "Equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex."

vania are abridged by these sections solely because of their sex. The sections therefore fall in light of the Amendment.

We would not interfere with the legislature's judgment that a spouse who has been abandoned, turned out, treated cruelly by his or her spouse or subjected to an intolerable condition, or has had adultery committed against him or her, deserves a divorce, (compare with §11) possibly with a permanent support order. Likewise, we deem it an appropriate legislative concern that counsel fees, alimony pendente lite, and costs be awarded to a needy spouse in a divorce proceeding, whether he or she is plaintiff or defendant, if the party can show both need and that the other party can afford to pay. (Compare with §46). But these remedies and rights must be available to either spouse who meets the legislative requirements specified. Legislation providing for such reciprocal rights would clearly meet the constitutional test of the Amendment, despite the fact that, given the present socioeconomic structure of our society, it may be expected that many more women would receive benefits from such legislation than men. However, absent such mutuality of rights to both sexes, the present statutes must fall.

The following reasoning in the dissenting opinion in *Henderson*, supra, passing on the constitutionality of §46 is equally applicable to §11:

" 'At this time when equal rights, regardless of sex, are constantly being asserted, . . . we have repeatedly stated that the financial positions of the parties, their respective earning capacities, their separate estates, together with their needs are fundamental questions in the determination of an award, . . . .' Hammond v. Hammond, 207 Pa. Superior Ct. 333, 336, 217 A. 2d 855 (1966), appeal after remand, 210 Pa. Superior Ct. 386, 233 A. 2d 628 (1967). In applying this policy, we have

consistently held that the 'proper cases' for a pendente lite award to a wife pursuant to §46 are those in which she has shown both her need and her husband's ability to pay. Wolfe v. Wolfe, 202 Pa. Superior Ct. 70, 195 A. 2d 272 (1963) ; Chambers v. Chambers, 188 Pa. Superior Ct. 506, 149 A. 2d 532 (1959) ; Rothman v. Rothman, 180 Pa. Superior Ct. 421, 119 A. 2d 584 (1956). However, the Equality of Rights Amendment mandates a further extension of this policy of equality by repudiating the sex of the individual as a permissible criteria for determining legal rights in Pennsylvania.

"The court below interpreted the equal rights amendment in its opinion: 'The thrust of the equal rights amendment is to insure full equality of political rights, . . . , full equality of educational opportunities at all levels, and full economic equality in the area of jobs and wages, as well as all types of benefits provided for workers. It was not intended to establish as basic law the demands of the extremist wing of the so-called Women's Liberation Movement.' (R. 17a)" While it is true that the Amendment does not adopt the extremist views referred to by the court below, its application is not limited to the areas enumerated above. Such a restrictive interpretation does not comport with either the plain meaning of the Amendment's words or its meaning as understood by the electorate which adopted it.

" 'Where in the Constitution "the words are plain . . . [they] must be given their common or popular meaning, for in that sense, the voters are assumed to have understood them when they adopted the constitution: Busser v. Snyder, 282 Pa. 440, 449, 128 A. 80: 'Lighton v. Abington Township, 336 Pa. 345, 354-355, 9 A. 2d 609.' Breslow v. Baldwin Twp. School Dist., 108 Pa. 121, 125, 182 A. 2d 501 (1962) ; cited with approval in Walsh v. Tate, 444 Pa. 229, 282 A. 2d 284 (1971). In the instant case, the Amendment specifically states that 'equality of rights under the law shall

not be denied . . . because of . . . sex.' No exception is made for rights in this area of domestic relations."

. . .

" 'While we are fully aware of the strong presumption of constitutionality which attaches to every Act of the Legislature (Daly v. Hemphill, 411 Pa. 263, 191 A. 2d 835, and a myriad cases cited therein), we nevertheless are convinced that the Act . . . is devoid of reasonable grounds of differences, and is arbitrary discriminatory and invalid. . . .'* as violative of the Equality of Rights Amendment. Section 46 cannot be read so as to operate equally between the sexes because it specifically states that the court may only allow 'a wife' a pendente lite award. The Statutory Construction Act, Act of May 28, 1937, P. L. 1019, art. I, §§1 et seq., 46 P.S. §§501 et seq., at §551 applies here: 'When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded.' The statute must be given its plain and obvious meaning. Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 40 A. 2d 30 (1944); cited with approval in Davis v. Sulcowe, 416 Pa. 138, 205 A. 2d 89 (1964), and Pgh. Beer Corp. Liquor License Case, 216 Pa. Superior Ct. 71, 260 A. 2d 493 (1969). We therefore cannot judicially interpret the word 'wife' as meaning spouse, even to save the Act from falling as unconstitutional. To redraft §46 in this manner 'would be to

---

* *Commonwealth v. Daniel*, 430 Pa. 642, 650, 243 A. 2d 400 (1968), which declared the "Muncy Act" unconstitutional as discriminating solely on the basis of sex. The decision was prior to the adoption of the Equity of Rights Amendment and relied on the Equal Protection Clause of the Fourteenth Amendment. See also *Reed v. Reed*, 404 U.S. 71, 40, U.S.L.W. 4013 (November 22, 1971), declaring a provision of the Idaho probate code violative of the Equal Protection Clause, because it gave preference to men over women of the same entitlement class in appointment as administrator of a decedent's estate. [Footnote in *Henderson*.]

undertake a wholly inappropriate judicial activity amounting to judicial legislation. See State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania, 441 Pa. 293, 300, 272 A. 2d 478, 482 (1971); Saulsbury v. Bethlehem Steel Co., 413 Pa. 316, 320, 196 A. 2d 664, 667 (1964).' Commonwealth v. Armao, 446 Pa. 325, 338, 286 A. 2d 626 (1972)." 224 Pa. Superior Ct. at 185-190.

Based on this reasoning, §§11 and 46, must be viewed as violative of the Amendment. It is interesting to note that the dissent in *Henderson*, id., which reached this conclusion, too, also discussed decisions of two lower courts dealing with the Equality of Rights Amendment and our domestic relations statutes. *Commonwealth ex rel. Lukens v. Lukens*, May Term, 1972, No. F-19149, Legal Intelligencer, Oct. 19, 1972 (Delaware Cnty.), affirmed (by this Court subsequent to *Henderson*), 224 Pa. Superior Ct. 227, 303 A. 2d 522 (1973), held that the Pennsylvania support laws did not violate the Amendment because, while there may not be mathematically precise equality, the statutes do create reciprocal rights to support for both sexes. But this was not the case in *Corso v. Corso*, 120 P.L.J. 183 (Allegheny Cnty. 1972) and the companion case of *Kehl v. Kehl*, 120 P.L.J. 296 (Allegheny Cnty. 1972), where the same Court of Common Pleas, indeed the same trial judge, that heard the instant case, subsequent to deciding the instant case, held §§11 and 46, respectively, to be unconstitutional.

President Judge BROSKY'S later opinions are in accord with our conclusion here. His opinion in *Corso* paraphrased pertinent parts of the excellent commentary in support of a federal equal rights amendment,[6]

---

[6] Brown, Emerson, Falk and Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women*, 80 Yale L. J. 871 (1971).

as applicable to the Amendment passed by the Citizens of this Commonwealth: "The basic principle of the Pennsylvania Equal Rights Amendment is that sex is not a permissible factor in determining the legal rights of women, or of men. This means that the treatment of any person by the law may not be based upon the circumstances that such person is of one sex or the other. The law does, of course, impose different benefits or different burdens upon different members of the society. That differentiation in treatment may rest upon particular traits of the persons affected, such as strength, intelligence, and the like. But under the Pennsylvania Equal Rights Amendment the existence of such a characteristic . . . to a greater degree in one sex does not justify classification by sex rather than by the particular characteristic or trait. . . . *This basic principle of the Pennsylvania Equal Rights Amendment derives from two fundamental judgments inherent in the decision to eliminate discrimination against women from our legal system.* Equality of rights means that sex is not a factor. [and] . . . [t]he Equal Rights Amendment, furnishes a viable structure for achieving equality of rights for women." (Emphasis in original.)

We are thus compelled to hold §§11 and 46 of the Divorce Law unconstitutional. The order of the court below is reversed.[7]

---

DISSENTING OPINION BY WATKINS, J.:

I respectfully dissent.

Sara Wiegand, the plaintiff-appellee, filed her action in divorce on July 12, 1967. A petition for counsel fees and for alimony pendente lite was filed and an order entered for alimony in the amount of $875 per

---

[7] We do not reach the question of the retroactive effect of the Equal Rights Amendment or of the filing of this opinion on §11, providing for divorces from bed and board.

month and $250 preliminary counsel fees, on August 14, 1967. In March, 1971, the wife through her third attorney filed the present petition. After several hearings, the order appealed from was entered in the amount of $5,000 and court costs. There are no children of this marriage and the wife had received alimony pendente lite at the rate of $875 per month for 56 months. The wife admitted receiving a total of at least $150,000 from the appellant up to March 8, 1972. The husband contends that she received a total of $167,500 from August, 1967 to March, 1972.

She testified that she spent the entire sum and the court below denied defense counsel the opportunity to cross-examine her as to how she spent the money and was now destitute. When fixing alimony pendente lite and counsel fees for a wife in a divorce action, the court should look at the separate estate and income of the wife. *Wolfe v. Wolfe,* 202 Pa. Superior Ct. 70, 195 A. 2d 272 (1963) ; *Campana v. Campana,* 186 Pa. Superior Ct. 472, 142 A. 2d 169 (1958).

In *Shuman v. Shuman,* 195 Pa. Superior Ct. 155, 170 A. 2d 602 (1961), this Court held at page 158: "We must bear in mind that the award of counsel fees in a divorce case is not intended to be in full reinbursement for expenditures which the wife may be required to make in the employment of counsel. It should merely be sufficient in amount to prevent that denial of justice which is the main concern of the courts."

The development of "Women's Lib" and the vote of the Pennsylvania Legislature in favor of the "Equal Rights Amendment" points up the fact that more serious consideration must now be given the problems of support, alimony pendente lite and counsel fees then heretofore when such women's rights were taken for granted.

The petitioner in this case swore in her petition and testified before the court that she was destitute

and in need of funds for counsel fees. The fact that she admitted the receipt of $150,000 in 56 months makes inquiry as to the dispersal of her separate estate and income most germane to the determination of whether she was so destitute as to require the payment of her counsel fees by the husband to prevent a denial of justice. The failure of the court below to permit cross-examination so that a full disclosure as to her estate and income and its disposition over the period involved would be before the court was an abuse of discretion.

I would remand the case for further hearing in accordance with this opinion.

WRIGHT, P. J., and JACOBS, J., join in this dissenting opinion.