Seery, Appellant, *v.* Seery, Appellant.

Argued March 25, 1957 and April 11, 1957.  Before
RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE,
ERVIN and WATKINS, JJ.

*Maurice W. Kail,* for plaintiff.

*F. C. Fiechter, Jr.,* with him *Freeman, Fox & Fiechter,* for defendant.

OPINION BY HIRT, J., May 3, 1957:

The parties, now in middle life, were married in 1931. The first separation occurred in 1946 when the the wife-plaintiff left her husband in their common home in Philadelphia. In an action brought by her, shortly thereafter, her attempt to divorce him on a charge of indignities was unsuccessful. She returned to him on February 4, 1951, and lived with him in the home which he had purchased, until October 24, 1954 when she again left him. Since then she has lived in an apartment in Philadelphia and has persisted in the separation down to the present. In June 1955 she brought the present action in divorce again charging indignities, and cruel and barbarous treatment. Without objection from either party, the proofs were limited to the period beginning with February 4, 1951. The

master recommended dismissal of the present complaint. The lower court found no merit in plaintiff's exceptions to the master's report and refused a divorce. Three appeals are before us which because related on the facts we may appropriately dispose of in this one opinion: (1) The plaintiff's appeal (No. 143) from the dismissal of her complaint in divorce; (2) the defendant's appeal (No. 81) from the order of the lower court directing him to pay plaintiff's counsel an additional fee of $500 and the master's additional fee of $1,000; (3) defendant's second appeal (No. 202) from an order of the Municipal Court of March 12, 1957 directing him to pay plaintiff $25 per week for her future support and $10 additional per week to apply on arrears on a prior support order.

APPEAL No. 143.

The testimony developed before the master, at hearings on 9 different days, comprises more than 800 typewritten pages. From a reading of the entire record we feel sure that counsel on both sides have not overlooked any incident, however trivial, having even a remote bearing on the issues. The house in which the parties lived, title to which is in them by entireties, was entirely suitable and was more than adequately furnished; defendant bought it in June 1951 for $34,500. A Federal lien has been entered against the property on an unpaid income tax assessment which with interest amounted to $25,303 as of March 1, 1957.

Plaintiff testified that defendant found fault with her cooking and with her housekeeping generally. She admitted that she didn't like housework and in our view the criticism of her cooking was also justified. There are two sons. Donald, now about 22, has lived with his mother since the separation but is now in Korea in the armed services. The younger son Lee, now 18, has remained with his father and is employed

in the father's furniture business. The sons have taken sides in their parents' clashes. Donald as a witness has supported his mother in the present proceedings and Lee, his father. In her testimony she first complained that their differences since February 1951 were "financial primarily". But at a later hearing she said that "he gave me enough to live on"; that she was satisfied "with the financial support" received by her and that "finances were not the trouble." The proofs support her free admissions to that effect. She received about $240 from him per month for current household expenses. She had a talent for music and some training as a pianist. Defendant had provided her with a Steinway piano which she later sold, and not long before the final separation he bought her a Hammond organ at a cost of $2,750. He said he bought it and gave it to her to alleviate her discontent and to contribute to her happiness. In spite of that, she admitted calling him "cheap, parsimonious, mean, niggardly" on at least one occasion. After the separation she took all of the United States Savings Bonds, registered in both their names, with her to Cincinnati and sold them through a bank there. She realized at least $4,100 from the sale of such of them as she could negotiate over her signature alone, and appropriated the proceeds. Defendant testified without denial that on one occasion he gave her a check for $3,250, the proceeds of sale of furniture to one of his customers. Plaintiff's statement at one of the hearings that "he didn't support me amply" is not borne out even by the admitted facts.

Plaintiff stresses two incidents. In the early morning of December 27, 1952 in the course of an argument in which she upbraided him for his critical attitude toward his son Donald the night before, she said that he pushed her around and threw her to the floor in the

kitchen; in falling her head came in contact with a metal edge of a cabinet; her lip was cut and there was also a cut on her forehead. It is not wholly without significance that immediately after first aid, her photograph was taken by her son Donald, undoubtedly for contemplated future use, as a record of the nature and extent of her injuries. The son Lee, who was present, said that defendant did not strike her but that she slipped on the waxed linoleum floor and fell. The defendant's testimony is to the same effect. Neither the master nor the lower court believed that the defendant struck her or intentionally inflicted any injury. We take the same view. The attitude of the plaintiff was belligerent; she invited the conduct of her husband that preceded her fall. She said that she "told him off" for his treatment of his son's friends in the house the night before, and that she said to him as she stood up to him that "she was not afraid of him." Her admitted attitude lends credence to defendant's testimony that she rushed at him in the kitchen and when he put up his arm to ward off the assault she slipped and fell. She had admitted that on other occasions she had threatened to strike him and that on at least one occasion she "struck him in the face."

The second incident occurred at an informal party at the home of "the Millers", who were acquaintances but not intimate friends of the Seerys. It was a small gathering principally of neighbors. A buffet lunch was set out and drinks were available on self-service without limitation. Three men appeared, stag, at the party. One of them was referred to as Butch; the others are nameless in this record. The three were referred to by a Mrs. Wunning, a neighbor of the Millers, as "rough strangers". One of the defendant's witnesses in describing them said they "weren't particularly educated" but she "couldn't say they were foul-mouthed".

There is evidence of one witness that one of these "characters" was monopolizing Mrs. Seery and that he manhandled her without remonstrance from her while dancing with her. Both the plaintiff and Mrs. Wunning said that she submitted to his kisses. Provoked by this conduct (as we, in agreement with the master and the lower court have found) the defendant, about 1 a.m. threw the contents of a highball glass in her face. One of her witnesses said: "We decided to put her to bed." While in bed the defendant slapped her on both sides of her face. He said she was drunk and that he was trying to bring her to, so that he could take her home. Neither the plaintiff nor the defendant actually was intoxicated but there were grounds in the conduct of his wife for him to believe that she was under the influence of liquor. She admitted that only on the two occasions above referred to, did he strike her.

For her birthday on October 24, 1954, Seery had given his wife a wrist watch and also had bought a cake for the occasion of a birthday party for her at a friend's house. Because of an argument with him inspired by her absence from the home on that day she left the defendant the following morning and has never returned to the common home.

Insofar as the alleged misconduct of the husband above referred to was provoked by the wife she cannot be heard to complain. *McGuigan v. McGuigan*, 178 Pa. Superior Ct. 176, 112 A. 2d 440; *Wasson v. Wasson*, 176 Pa. Superior Ct. 534, 108 A. 2d 836. Plaintiff's complaints in other respects in this record are general in nature (Cf. *Garroway v. Garroway*, 163 Pa. Superior Ct. 317, 61 A. 2d 379) or, insofar as she is specific, are either incredible or do not charge serious misconduct.

She referred to arguments "all the time we were together" and testified that "he upset me continually". She said she had to have medical treatment for her nerves while she lived with him but elsewhere in her testimony she admitted that she had received sedatives regularly, on prescription, three or four times a month continually for the last 12 years. That period included the 6 years that she lived apart from him. Defendant was a good provider; he drank occasionally but only moderately, and never was interested in other women. He worked hard in his business. He admitted that he was temperamental and at times irritable when he came home tired after a hard day's work, and particularly so after the tax lien had been entered against the home at a time when the problem of paying off the lien seemed insurmountable. She too admitted that she was somewhat to blame and that she was "not without fault in her dealings with her husband." She attributed the failure of their marriage to "incompatibility" because of clashes in temperament. That is as valid an appraisal as any. In any view, this, in a number of respects, was an unhappy marriage but that does not supply grounds for its dissolution. The fact that husband and wife do not get along does not warrant a decree of divorce. *DeFrancesco v. DeFrancesco,* 179 Pa. Superior Ct. 106, 115 A. 2d 411. There is no evidence in this case from which an inference of settled hate and estrangement on the part of the defendant may be inferred. Cf. *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 50 A. 2d 520. On the contrary all of the proofs on both sides are to the effect that throughout the last separation the defendant repeatedly, by telephone and by written messages, has asked his wife to return to him. She admits his sincerity in these requests. The record in its entirety in this case utterly fails to support the charge of cruel and bar-

barous treatment and clearly does not supply proof of a course of conduct of the husband which rendered the wife's condition (even assuming her to be an innocent party) intolerable and her life burdensome. A divorce in this case was properly refused. The order in appeal No. 143 is affirmed.

APPEAL No. 81.

In this appeal the defendant questions the propriety of the order of the lower court directing him to pay $500 additional fees to plaintiff's counsel and an additional master's fee of $1,000. These fees are not questioned as to amount; admittedly they have been earned. Defendant's contention is that they should be paid in whole or in part by the wife-plaintiff. The fact that the wife in the action was unsuccessful in securing a decree of divorce does not in itself bar her from looking to her husband for counsel fees and costs in the action. *Tumini v. Tumini,* 150 Pa. Superior Ct. 363, 28 A. 2d 357. A wife may be ordered to pay such fees in whole or in part. The rule is that "In determining the amount to be allowed the wife for counsel fees, consideration must be given not only to the value of counsel's services and the wife's necessities but also to the husband's ability to pay and the character, situation and surroundings of the parties": *Rothman v. Rothman,* 180 Pa. Superior Ct. 421, 119 A. 2d 584; *Albrecht v. Albrecht,* 175 Pa. Superior Ct. 650, 107 A. 2d 209.

At our direction testimony was taken before the lower court to ascertain the comparative financial resources of the parties. A certified public accountant prepared a balance sheet from defendant's books which showed the net worth of his business to be $22,000. The wife-plaintiff has refused to join her husband in the execution of a mortgage on the home to raise funds for the payment of the Federal Income Tax lien entered

against it, in whole or in part. She considers this a personal liability of her husband. The accountant testified that his computation of defendant's net worth did not reflect the tax lien and that if this lien were entered on defendant's books as a liability, a balance sheet would show his business to be insolvent. Defendant has some assets in insurance policies with cash surrender values (diminished perhaps by unpaid loans which he had made when he bought the house). He also has about $3,600 in United States Savings Bonds. Out of a total of $225 per week drawn by him from his business he pays his son Lee, who works for him, $85 per week and the wages of two other employees. From that amount he has left $60 to $70 per week from the business for his personal expenses. His business showed a profit of $16,852 in 1956 subject to the payment of income taxes of $3,909.66. The income of the business fluctuates; for 1955 it was about $2,900 less.

Plaintiff before the last separation moved the Hammond organ which her husband had given her, to a funeral home where she was employed as an organist. She still has that employment which pays her $65 per week. Her total earned gross for 1956 amounted to $2,900. On May 9, 1955 the balance in her personal bank account was $1,343. In addition to proceeds of the U. S. Savings Bonds above referred to, which the plaintiff sold, she has an asset in the amount of defendant's arrears as of March 25, 1957 on an old support order entered by the Municipal Court against him. She still has the Hammond organ. Her son Donald, who has made his home with her, and presumably will return after his present military service, may be expected to contribute to the maintenance of the household. Defendant as directed by us at a prior argument, has paid the costs in the divorce proceeding amounting

to $616.35. While it is our considered judgment in the light of all the circumstances that the plaintiff should be charged with a substantial part of the remaining costs of this her second experiment in testing her chances of securing a divorce from her husband, nevertheless in order to avoid confusion in the record of these appeals the order of the lower court in appeal No. 81 is affirmed and the defendant is directed to pay plaintiff's counsel fee of $500 and the master's fee of $1,000.

APPEAL No. 202.

By the order in this appeal we will accomplish indirectly what we conceive must be done to compel the wife to discharge her just obligation to pay a part of the fees of her counsel and of the master in the divorce case.

As of March 25, 1957 a computation of the amount in arrears on a prior support order against defendant showed an unpaid balance of $1,296. On November 13, 1956 after the decree of dismissal in the divorce action the defendant-husband petitioned the lower court to vacate the then subsisting order of record for the support of his wife. The Municipal Court refused relief except to reduce the order to $25 per week for future support of the wife and $10 per week to apply on the arrears. This appeal is from that order. In the divorce case before us in appeal No. 143 the master and the lower court found that the wife was not an injured and innocent spouse, and the dismissal of her complaint in effect was a legal conclusion that she was not justified in leaving her husband. We agree with this conclusion. She therefore is chargeable with desertion begun on October 24, 1954 and persisted in for more than the statutory period of 2 years. On October 25, 1956 when plaintiff's desertion had ripened into actionable ground for divorce in a suit by the hus-

band, at his option, the arrearages on the old support order amounted to $511. In the present appeal the order of the Municipal Court is reversed and it is ordered that the above arrearages of $511 be remitted, for the purpose above indicated, in consideration of the defendant's compliance with our order in appeal No. 81. The remainder of the arrearage which accrued after that date is ordered to be remitted, also, for the reason that, according to the computation in the record this part of the arrearage accrued following two years of continuous wilful and malicious desertion of the defendant by the wife-plaintiff. Conduct on the part of a wife which would supply a husband with a valid ground for a decree of divorce will justify the husband in refusing to support his wife. *Com. ex rel. Herman v. Herman,* 95 Pa. Superior Ct. 510; Cf. *Com. ex rel. Cunningham v. Cunningham,* 102 Pa. Superior Ct. 104, 156 A. 551; *Commonwealth v. Cooper,* 183 Pa. Superior Ct. 36, 128 A. 2d 181.