Henderson *v.* Henderson, Appellant.

*Peter C. Paul,* with him *Carl D. Buchholz,* and *Rawle & Henderson,* for appellant.

No oral argument was made nor brief submitted for appellee.

OPINION PER CURIAM, March 27, 1973:

The six judges who heard this appeal being equally divided, the order is affirmed.

DISSENTING OPINION BY SPAULDING, J.:

I respectfully dissent.

Appellant Theodore H. Henderson appeals from an order of the Court of Common Pleas of Philadelphia,

Family Court Division, directing him to deposit security for payment of costs in this divorce action.

The facts are undisputed.[1] Appellee Barbara Ann Henderson filed a complaint in divorce to which appellant filed an answer. Appellee petitioned for alimony pendente lite, counsel fees, and costs. By agreement, the rule for counsel fees was made absolute in the sum of $200, the balance of the rule being continued until further notice. The master appointed by the court conducted two master's meetings and then filed a rule upon the parties to show cause why a reasonable sum should not be deposited as security for additional master's fees.[2] A similar petition was filed by the stenographer. The court directed both parties to submit statements of income and assets and, subsequent to their being filed,[3] entered an order directing appellant to deposit $500 as security for additional master's fees and $100 as security for additional stenographer's charges.

Appellant's principal contention is that §46 of The Divorce Law, Act of May 2, 1939, P. L. 1237, §46, as amended, 23 P.S. §46, violates the Equality of Rights Amendment to the Pennsylvania Constitution, by providing that wives, *but not husbands*, may be allowed reasonable alimony pendente lite, counsel fees and expenses.[4] The Act states: "In case of divorce from the

---

[1] The parties filed an agreed Statement of the Case in accordance with Rule 47 of this Court.

[2] As provided by Rule 1133(a)*(2)(b) of Philadelphia C.P. Rules promulgated pursuant to the Act of May 2, 1929, P. L. 1237, §66, 23 P.S. §66.

[3] Appellant, a minister, filed accountant's statements showing a net worth of $17,752 and total income for the first half of 1971 of $4,410, about $170 per week before taxes. (R. 12a-13a). Appellee filed an affidavit showing assets of $239 and a 1970 automobile, after-tax earnings of $97 per week, and receipt of support payments of $45 per week. (R. 10a).

[4] Appellant also contends that the statute violates the Equal Protection Clause of the Fourteenth Amendment. Because I find

bonds of matrimony or bed and board, the court may, upon petition, in proper cases, allow a wife reasonable alimony pendente lite and reasonable counsel fees and expenses. If at any time, either before or after a final decree has been entered divorcing the parties, the husband is in arrears . . ., the wife . . . may, by affidavit of default, upon praecipe to the prothonotary, obtain a judgment for such arrearages." Act of May 2, 1939, P. L. 1237, §46, as amended.

The award of costs under §46, which the present appeal challenges, is different from an award of costs pursuant to §56 of the Act. This distinction is elucidated by the Commentary to The Pennsylvania Divorce Law,[5] 23 P.S. pp. 343, 356, as follows: "The court may award costs to the party [wife *or* husband] in whose behalf the sentence or decree passes. . . . It will be noted that the court is authorized to award costs only to the successful party or direct that each party pay their own. . . . The distinction between awarding costs in a decree and the awarding of counsel fees and expenses under Section 46 of the Divorce Law must be considered in this regard. The provision as to counsel fees and expenses relates to payments or orders pendente lite whereas provisions under Section 56 refer to the final decree. Further, Section 46 refers to and inures to the benefit of the wife alone whereas the provisions under Section 56 refer to the final decree. Further, Section 46 refers to and inures to the benefit of the wife alone whereas the provisions under Section 56 inures to the benefit of either. The purpose of awarding counsel fees and expenses to a wife, whether plaintiff or defendant, is to make certain that financial ability will not prevent her from making a defense or, in a proper

the Act infirm under the Pennsylvania Constitution, I do not reach this question.

[5] By Hubert I. Teitelbaum, Esquire (P.S., 1955).

case, from bringing her action."[6] The precise distinction between the two sections points out the basis of appellant's position. He argues that the benefit to wives *alone* effected by §46 makes the statute constitutionally infirm in that the only basis for this distinction is sex. If the purpose of the Act as stated in the above comment, is to insure that lack of financial ability will not prevent an action or defense by a wife in a divorce case, then this intent may only be implemented by legislation which would also preserve a husband's similar rights to bring or defend a divorce action where he lacked the financial ability and his wife had sufficient ability to pay. Since §46 affords the right to receive costs pendente lite exclusively to females, the rights of males are abridged solely because of their sex. The statute therefore must fall in light of the Equality of Rights Amendment to the Pennsylvania Constitution, Pa. Const., Article I, §27 (Adopted May 18, 1971), which provides that: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."[7]

"At this time when equal rights, regardless of sex, are constantly being asserted, . . . we have repeatedly stated that the financial positions of the parties, their respective earning capacities, their separate estates, together with their needs are fundamental questions in

---

[6] See *Seery v. Seery*, 183 Pa. Superior Ct. 322, 131 A. 2d 845 (1957) ; *Tumini v. Tumini*, 150 Pa. Superior Ct. 363, 28 A. 2d 357 (1942) ; indicating that the fact that a wife is unsuccessful in a divorce action does not in itself bar her from looking to her husband for counsel fees and costs (under §46). This differs from the rule in §56 which authorizes the court to award costs only to the successful party.

[7] Compare with Section 1 of the Proposed Equal Rights Amendment to the United States Constitution, H.R.J. Res. 208, 92d Cong., 1st Sess. (1971) ; S.J. Res. 8, 92d Cong., 1st Sess. (1971), stating: "Equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex."

the determination of an award, . . ." *Hammond v. Hammond,* 207 Pa. Superior Ct. 333, 336, 217 A. 2d 855 (1966), appeal after remand, 210 Pa. Superior Ct. 386, 233 A. 2d 628 (1967). In applying this policy, we have consistently held that the "proper cases" for a pendente lite award to a wife pursuant to §46 are those in which she has shown both her need and her husband's ability to pay. *Wolfe v. Wolfe,* 202 Pa. Superior Ct. 70, 195 A. 2d 272 (1963); *Chambers v. Chambers,* 188 Pa. Superior Ct. 506, 149 A. 2d 532 (1959); *Rothman v. Rothman,* 180 Pa. Superior Ct. 421, 119 A. 2d 584 (1956). However, the Equality of Rights Amendment mandates a further extension of this policy of equality by repudiating the sex of the individual as a permissible criteria for determining legal rights in Pennsylvania.

The court below interpreted the equal rights amendment in its opinion: "The thrust of the equal rights amendment is to insure full equality of political rights, . . ., full equality of educational opportunities at all levels, and full economic equality in the area of jobs and wages, as well as all types of benefits provided for workers. It was not intended to establish as basic law the demands of the extremist wing of the so-called Women's Liberation Movement." (R. 17a) While it is true that the Amendment does not adopt the extremist views referred to by the court below, its application is not limited to the areas enumerated above. Such a restrictive interpretation does not comport with either the plain meaning of the Amendment's words or its meaning as understood by the electorate which adopted it.

"Where in the Constitution 'the words are plain . . . [they] must be given their common or popular meaning, for in that sense, the voters are assumed to have understood them when they adopted the constitution: Busser v. Snyder, 282 Pa. 440, 449, 128 A. 80;' Lighton

v. Abington Township, 336 Pa. 345, 354-355, 9 A. 2d 609." *Breslow v. Baldwin Twp. School Dist.*, 408 Pa. 121, 125, 182 A. 2d 501 (1962); cited with approval in *Walsh v. Tate*, 444 Pa. 229, 282 A. 2d 284 (1971). In the instant case, the Amendment specifically states that "equality of rights under the law shall not be denied . . . because of . . . sex." No exception is made for rights in this area of domestic relations.

Common pleas courts of two counties have recently applied the Equality of Rights Amendment to sections of our divorce and support laws. While the results in these cases differ, the reasoning in both is in accord with what I feel is the proper holding in the instant case. In *Corso v. Corso*, 120 P.L.J. 183 (Allegheny Cnty. 1972), and the companion case of *Kehl v. Kehl*, 120 P.L.J. 296 (Allegheny Cnty. 1972), the Court of Common Pleas of Allegheny County, Family Division, held §§11 (divorce from bed and board) and 46 of The Divorce Law, respectively, to be unconstitutional. President Judge Brosky's opinion in *Corso* quotes and paraphrases pertinent portions of an excellent commentary[8] supporting a federal equal rights amendment, as applicable to Pennsylvania's Amendment: "The basic principle of the Pennsylvania Equal Rights Amendment is that sex is not a permissible factor in determining the legal rights of women, or of men. This means that the treatment of any person by the law may not be based upon the circumstance that such person is of one sex or the other. The law does, of course, impose different benefits or different burdens upon different members of the society. That differentiation in treatment may rest upon particular traits or characteristics of the persons affected, such as strength, intelligence, and the

---

[8] Brown, Emerson, Falk and Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women*, 80 Yale L.J. 871 (1971).

like. But under the Pennsylvania Equal Rights Amendment, the existence of such a characteristic . . . to a greater degree in one sex does not justify classification by sex rather than by the particular characteristic or trait. . . . *This basic principle of the Pennsylvania Equal Rights Amendment derives from two fundamental judgments inherent in the decision to eliminate discrimination against women from our legal system.* Equality of rights is not a factor. [and] . . . [t]he Equal Rights Amendment, furnishes a viable structure for achieving equality of rights for women."[9] "Unquestionably, the trend in marriage and divorce law is in the direction of treating the spouses equally or on the basis of their individual capacities."[10] Undoubtedly, this was one of the intentions of the Pennsylvania electorate in adopting the "equality of rights under the law" wording of the Amendment, which makes sex a prohibited classification. In light of the Amendment, §46 must fall.

In *Commonwealth ex rel. Lukens v. Lukens,* May Term, 1972, No. F-19-149, Legal Intelligencer, Oct. 19, 1972 (Delaware Cnty.), affirmed, 224 Pa. Superior Ct. 227, 228, 303 A. 2d 522 (1973), the Court of Common Pleas of Delaware County rejected the contention that Pennsylvania's support laws are violative of the equality of rights provision. The court reasoned as follows:

"The nonsupport law is designed to enforce the marital obligations when it becomes necessary to do so. It is here emphasized that a woman obtains support only when there is a need and the husband has the ability to

---

[9] See generally *Brown et al., id.;* Note, *Sex Discrimination and Equal Protection*: Do we Need a Constitutional Amendment?, 84 Harvard L.R. 1499 (1971) ; *Equal Rights for Women*: *A Symposium on the Proposed Constitutional Amendment,* 6 Harvard Civil Rights —Civil Liberties L.R. 216 (1971).

[10] 80 Yale L.J. at 937.

# ERRATA

Page 188, line 9 should read:
Equality of rights means that sex is not a factor. [and] . . . [t]he

provide that need. It is clear that the Act of 1939 does not require the husband to do any more than what he originally consented to do by marrying his wife. . . . Thus, the Act of 1939 does not arbitrarily and capriciously operate to deny the equal rights of a male or a female solely because of sex, but realistically serves to solve a problem which arises from the relationship of marriage.

"[A] husband does have a right to seek support from his wife under the Act of June 24, 1937, P. L. 2405, sec. 3, 62 P.S. 1973 . . . [which] can easily be referred to as the counterpart of the Act of 1939, since a husband in need can seek support from his wife if she has the financial ability to provide for her husband's needs.

. . .

"The vast majority of support cases concern themselves with a petition filed by a wife. However, the Act of 1937 is sufficiently broad to allow a husband to seek support. Thus, the law does not arbitrarily deprive a husband from support as the respondent contends." The court also went on to distinguish the *Corso* case, based on the above reasoning. Were such a reciprocal arrangement (as exists for support) established by §46, allocating the responsibility to advance pendente lite costs on the basis of need and ability, the Act would pass constitutional muster. However, the statute as it now is enacted lacks such a provision. It is precisely the present unilateral benefit to women, but not men, which violates the Equality of Rights Amendment.

"While we are fully aware of the strong presumption of constitutionality which attaches to every Act of the Legislature (*Daly v. Hemphill*, 411 Pa. 263, 191 A. 2d 835, and a myriad cases cited therein), we nevertheless are convinced that the Act . . . is devoid of reasonable grounds of differences, and is arbitrary discriminatory

and invalid. . . ."[11] as violative of the Equality of Rights Amendment. Section 46 cannot be read so as to operate equally between the sexes because it specifically states that the court may only allow "a wife" a pendente lite award. The Statutory Construction Act, Act of May 28, 1937, P. L. 1019, art. I, §§1 et seq., 46 P.S. §§501 et seq., at §551 applies here: "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded." The statute must be given its plain and obvious meaning. *Commonwealth ex rel. Cartwright v. Cartwright,* 350 Pa. 638, 40 A. 2d 30 (1944); cited with approval in *Davis v. Sulcowe,* 416 Pa. 138, 205 A. 2d 89 (1964), and *Pgh. Beer Corp. Liquor License Case,* 216 Pa. Superior Ct. 71, 260 A. 2d 493 (1969). We therefore cannot judicially interpret the word "wife" as meaning spouse, even to save the Act from falling as unconstitutional. To redraft §46 in this manner "would be to undertake a wholly inappropriate judicial activity amounting to judicial legislation. See State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania, 441 Pa. 293, 300, 272 A. 2d 478, 482 (1971); Saulsbury v. Bethelehem Steel Co., 413 Pa. 316, 320, 196 A. 2d 664, 667 (1964)." *Commonwealth v. Armao,* 446 Pa. 325, 338, 286 A. 2d 626 (1972).

I would declare §46 of the Divorce Law unconstitutional and reverse the order of the court below.[12]

---

[11] *Commonwealth v. Daniel,* 430 Pa. 642, 650, 243 A. 2d 400 (1968), which declared the "Muncy Act" unconstitutional as discriminating solely on the basis of sex. The decision was prior to the adoption of the Equality of Rights Amendment and relied on the Equal Protection Clause of the Fourteenth Amendment. See also *Reed v. Reed,* 404 U.S. 71 (1971), declaring a provision of the Idaho probate code violative of the Equal Protection Clause, because it gave preference to men over women of the same entitlement class in appointment as administrator of a decedent's estate.

[12] It may be argued, although appellee has not raised the contention, that this appeal should be quashed as interlocutory. How-

HOFFMAN and CERCONE, JJ., join in this dissenting opinion.

ever, the majority, by its affirmance of the court below has implicitly determined that the lower court's order is appealable. See *Wargo v. Wargo*, 184 Pa. Superior Ct. 587, 590, 136 A. 2d 163 (1957) ; *Gould v. Gould*, 95 Pa. Superior Ct. 387 (1929), to the effect that a pendente lite award is a final order from which an appeal will lie.