Weimer v. Weimer

*James B. Yelovich*, for petitioner.
*John M. Cascio*, for respondent.

COFFROTH, *P.J.*, March 23, 1978—This divorce case is here on the wife's petition to require her husband to pay counsel fees and expenses for his wife, alleging that she is "without funds to maintain herself and defend against this action," and on respondent husband's answer to the petition alleging that his wife is gainfully employed and "is not without funds to defend against this action." At the hearing, it appeared that the case is still in the pleading stage on complaint and praecipe for rule for bill of particulars, that petitioner makes no claim for expenses, but does request a nominal award against her husband in the usual amount of $100 on account of counsel fees.

## FACTS

The parties are working people without significant resources beyond earnings. Petitioner wife earns $758 monthly as a secretary; respondent husband earns $682 monthly at Somerset Door and Column Company. Petitioner also receives from respondent $102 monthly for the support of their one child in respondent's custody, pursuant to a support order made February 27, 1978, in no. 33 domestic 1978.

## DISCUSSION

Considering that petitioner wife's monthly earnings from her employment are $76 greater than those of respondent husband, that she has custody of their five-year-old daughter toward whose support respondent contributes $102 monthly, that each has substantial monthly debt payments (wife, $237; husband, $261), and that neither has any substantial savings or other resources, we may fairly conclude that the parties are of substantially equal financial status. The question, then, is whether a wife whose financial position is substantially the same as her husband's is nevertheless entitled to the customary nominal award of counsel fees in divorce. Counsel for petitioner says she is, counsel for respondent says she is not. We take the latter view. The case might well be disposed of at this point by summary order denying the petition without further discussion, on the authority of Baumgardner v. Baumgardner (No. 3), 29 Somerset 225 (1974), hereinafter discussed, in which a similar petition was denied in 1974. But we find that such petitions keep coming to the court, so we think we should take this occasion to explain more fully why counsel fees should not be awarded in such cases and to delineate more clearly the practice to be followed in this court.

We recognize that there has been a long standing common practice in Pennsylvania and in this court in past years of routinely awarding a wife a nominal counsel fee in the early stages of a divorce case, without inquiring into relative ability of the parties to pay or the extent of legal services performed or to be performed, virtually presuming that the husband was best able to pay and that services would be rendered to justify the fee. As stated in 2 Freed-

man, Law Of Marriage And Divorce In Pennsylvania (2d Ed. 1957), §465, 973:

"It may therefore be said that the amount customarily awarded to the wife as counsel fees in the various counties is allowed as of course, regardless of her necessities or of the husband's ability to pay. It is viewed as the inevitable consequence of pendency of divorce litigation between the spouses . . .

"Where, however, an unusual amount of professional service is required because of the nature of the litigation, the wife is entitled to additional counsel fees beyond the customary allowance. Such additional award will not be made to her, however, without full inquiry regarding the extent of her estate, the husband's abilities and the services involved."

For 30 years or so in our experience, a routine allowance of counsel fees of $100 was made in such cases in this county.

Such routine nominal allowances by common consent or understanding may save hearing time before the court, but cannot be justified on principle, and this was true even before notions of spousal equality became current. It has always been the law that the relative ability of the spouses to pay for counsel must be considered. As summarized in 12 P.L.E. §11, 223:

"The allowance of counsel fees and the amount thereof are largely within the discretion of the trial court, which should be exercised upon consideration of the wife's needs and the extent of her separate estate, the amount the husband is able to pay, and the character, situation and surroundings of the parties, to the exclusion of consideration of the merits of the action."

See also Wechsler v. Wechsler, 242 Pa. Superior Ct. 356, 363 A. 2d 1307 (1976). Accordingly, the fee is not measured solely by the value of the services performed, nor solely by the wife's needs; those factors are important but their operation is and must be limited by the basic consideration of the respective abilities of the parties to pay. See Shuman v. Shuman, 195 Pa. Superior Ct. 145, 170 A. 2d 597 (1961); Brong v. Brong, 129 Pa. Superior Ct. 224, 195 Atl. 439 (1937); Naylor v. Naylor, 59 Pa. Superior Ct. 547, 563 (1915).

The professed object of requiring a husband to pay or contribute to his wife's counsel fee was and is to "place the parties on a par in defending their rights." See Wechsler v. Wechsler, supra, 360; Campana v. Campana, 186 Pa. Superior Ct. 472, 142 A. 2d 169 (1958). Yet the routine granting to a wife of an order upon the husband for even nominal counsel fees, without inquiry into the equities, could well be unjust; and often was. Even when the evidence showed that resources were substantially equal the courts sustained an award against the husband in favor of the wife. As stated in McCormick v. McCormick, 202 Pa. Superior Ct. 250, 253-4, 195 A. 2d 851 (1963), decided before adoption of the Pennsylvania Equal Rights Amendment:

"Counsel argues that since the status of women has changed, the rule should be changed and that a wife whose income or estate approximates that of her husband should be denied an order for alimony pendente lite, counsel fees and expenses. This contention is not entirely without merit, and it may be that the law is too slow in adjusting to changed conditions. We recognize that under certain circumstances, as where the wife's estate and income

substantially exceed that of her husband, an order for counsel fees and expenses would be improper.

"It is argued that the husband and wife here are on the same economic plane, having substantially the same income. But, the husband is earning more than his wife and has no order of support against him. Under all the circumstances, we are of the opinion that the court below did not abuse its discretion in ordering the husband to pay part of his wife's counsel fees and expenses."

Such holdings are relics of traditional notions that women are the weaker sex and require masculine protection. Such traditional notions have been discarded by the Equal Rights Amendment to the Pennsylvania Constitution, Article 1, §28.[1] The amendment places spouses on an equal plane. "The law will not impose different burdens upon the members of a society based on the fact that they may be man or woman." Henderson v. Henderson, 458 Pa. 97, 101, 327 A. 2d 60 (1974), which holds section 46 of the Divorce Law unconstitutional.[2] Accordingly, in Baumgardner v. Baumgardner (No. 3), 29 Somerset 226 (1974), we expressly held

---

1. Article 1, §28 was adopted May 18, 1971 and provides: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

2. Section 46 of the Divorce Law of May 2, 1929, P.L. 1237, as amended, 23 P.S. §46, considered in Henderson, supra, provided: "In case of divorce from the bonds of matrimony or bed and board, the court may, upon petition, in proper cases, allow a wife reasonable alimony pendente lite and reasonable counsel fees and expenses." In 1974, section 46 was amended by changing the word "wife" to "spouse," thereby equalizing liability. See Henderson, supra, 101.

that: "We cannot, however, follow prior practice of placing liability for counsel fees routinely and entirely upon the husband . . ." We adhere to that ruling.

Petitioner's counsel stresses, however, that his client is defendant in the case, and is not a voluntary litigant, is in court against her will, and for that reason should be assisted by her husband in financing the litigation despite equality of means. No authority is cited for that proposition. The only support for it found by us is Christ v. Christ, 75 D. & C. 2d 499 (1976). There the Northumberland County Court in the husband's divorce action declined the wife's petition for alimony pendente lite under the Pennsylvania Equal Rights Amendment because there was no great disparity in the financial positions of the parties. But the court granted counsel fees to the wife, saying at 501: "The awarding of counsel fees and costs, however, presents different considerations. On the one hand, plaintiff has forced his wife into this arena of adversary proceedings, to defend herself against this action for divorce. She must now incur counsel fees and litigation-related costs [expenses] which she would not otherwise have had to."

We do not consider that a defensible position. Assuming that every defendant wife is forced into divorce litigation against her will to defend her honor is assuming too much; it is equally logical, and equally accords with reality, to assume that the wife for ulterior motives unreasonably resists the suit of her innocent and injured husband. See Tumini v. Tumini, 150 Pa. Superior Ct. 363, 366, 28 A. 2d 357 (1942). As pointed out in P.L.E., supra, the merits of the action are irrelevant on the issue of counsel fees. See Seery v. Seery, 183 Pa. Superior

Ct. 322, 330, 131 A. 2d 845 (1957). What is at issue is the right of the parties, whether plaintiff or defendant, to have as fair and equal an opportunity as possible to litigate their contentions, right or wrong. As stated in Breinig v. Breinig, 26 Pa. 161, 165 (1856), by Justice Black (formerly President Judge of this Court): "It has been the uniform practice to allow a wife destitute of a separate estate, *who is either suing or defending a case of divorce,* such reasonable sum as will enable her to carry it on." (Emphasis supplied.)

In Brong v. Brong, supra, 226, it is stated that ". . . to deny an innocent and injured husband a divorce unless he pay counsel fees beyond his ability to pay is to close the doors of the courts to many worthy suitors. The statute contemplates the payment of a *reasonable* counsel fee, limited by the necessities appearing from the evidence, such as will as nearly as possible promote the administration of fair and impartial justice by placing the parties on a par in defending their rights." (Emphasis in original.) Accord: Campana v. Campana, supra, 475.

Of course, the award of reasonable counsel fees is not mandatory, but is discretionary with the court: McCormick v. McCormick, supra, 253; Tumini v. Tumini, supra. But this discretion is judicial in nature and not arbitrary: York v. York, 107 Pa. Superior Ct. 522, 526, 164 Atl. 87 (1933). The nature of judicial discretion is more fully described in Craig Estate, 30 Somerset 377, 395 (1975), as follows:

"The discretion allowed here to the Court is not an absolute or undirected choice. It is a judicial discretion which must be harnessed to principle, and exercised within the boundaries of applicable

criteria. Melnick v. Melnick, supra, [147 Pa. Superior 567], 570-71. Judicial discretion is never exercised for the purpose of giving effect to the will of the judge, but always to give effect to the principle of the law."

We do not say that, in the exercise of this discretion, the nature of the conduct or misconduct of the parties in the principal controversy is irrelevant; when the issue of counsel fees comes before the court *after* the cause for divorce has been adjudicated it is natural for the court to be influenced by proof of grossly reprehensible misconduct on the part of one or the other of the spouses. See Meinel v. Meinel, 117 Pa. Superior Ct. 263, 267, 178 Atl. 174 (1935); Naylor v. Naylor, supra, 564. The dogma is that the court considers also the "character, situation, and surroundings of the parties." Wechsler v. Wechsler, supra, 360; Homler v. Homler, 120 Pa. Superior Ct. 66, 68, 181 Atl. 840 (1935); 12 P.L.E., §11, supra. Even so, that factor should not be given such decisive influence that the opportunity to litigate is foreclosed by denying reasonable counsel fees to an impecunious spouse or by imposing an undue burden upon the other; the factor of misbehavior may be decisive in cases where the issue is otherwise close, or the amount of an award is in the balance.[3] The point is that when questions of sp-

3. Compare the following decisions in alimony pendente lite cases involving the factor of spousal misbehavior: HvH supra; Drazenovich v. Drazenovich, 29 Somerset 8 (1970); Williams v. Williams, 29 Somerset 11 (1971). See also Brady v. Brady, 168 Pa. Superior Ct. 538, 79 A. 2d 803 (1951), and Com. v. Callen, 165 Pa. Superior Ct. 163, 166, 67 A. 2d 610 (1949), appeal from this court.

ousal misconduct are raised when an application for counsel fees is before the court, the conduct of the parties should not then be litigated, nor should it be prejudged; conclusions of misconduct should be drawn only after such misconduct has been clearly established in the principal divorce action.

We are led to this conclusion: Routine nominal awards of counsel fees are no longer to be granted, and since awards must be related to needs, abilities and the nature and extent of the services to be performed, the proper practice is to defer making counsel fee awards until the end of the case after the services have been performed, or at a time when it is clear what services will be performed in the future. Compare Baumgardner v. Baumgardner (No. 3), 29 Somerset 219 (1974); McIlwain v. McIlwain (No. 2), 27 Somerset 352 (1972); Dorazio v. Dorazio (No. 2), 33 Somerset 93 (1972). See also Campana v. Campana, supra, 474; Morgan v. Morgan, 182 Pa. Superior Ct. 182, 185, 126 A. 2d 805 (1956); Eisenberg v. Eisenberg, 2 D. & C. 3d 357 (1976). Accordingly, the application for an allowance for future counsel fees in this case is also premature.[4]

This view of the proper practice for obtaining counsel fees deprives an impecunious spouse of the opportunity of having funds in advance to engage counsel, which might be thought to prejudice the indigent party and to place the parties in substan-

---

4. As to the time for allowance of expenses, see McIlwain v. McIlwain (No. 2), supra. As to the time for awarding costs, see York v. York, supra. On the distinction between expenses and costs, see Henderson v. Henderson, 224 Pa. Superior Ct. 182, 184, 303 A. 2d 843 (1973), dissenting opinion.

tial disequilibrium. But that fear is more apparent than real.

Although the award of counsel fees is now generally based on statute (section 46 of the Divorce Law), the courts made such awards long before any statutory provision for them was enacted, as an inherent power incident to the jurisdiction of the court to decree a divorce and as an exercise of the court's equitable powers: York v. York, supra.[5] Initially, the very purpose of an award of counsel fees was to provide funds to pay for future legal services: Morgan v. Morgan, supra, 185. The thought was that an indigent could not obtain competent counsel without money in hand and that such a preliminary award was essential to assure basic justice. As stated in Breinig v. Breinig, supra, 165:

"It has been the uniform practice to allow a wife destitute of a separate estate,who is either suing or defending a case of divorce, such reasonable sum

---

5. It is at least arguable that section 46 of the Divorce Law, before its amendment in 1974, held unconstitutional in Henderson v. Henderson, supra, should have passed the test of constitutionality, on the ground that the statute was merely intended to express a legislative approval of the judicial decisions making non-statutory counsel awards in favor of a wife as an exercise of the inherent equitable powers of the court (York v. York, supra), without intending to curb an exercise of such equitable powers in extending such awards also to needy husbands, as such equities might become apparent. See Stump v. Stump, 111 Pa. Superior Ct. 541, 544-5 (1934), holding that the divorce law "will be understood as continuing the law as declared except to the extent that the Code clearly and definitely changes it." No such contention was advanced or considered in Henderson. Compare the constitutional problem in support cases discussed in Com. ex rel. Murray v. Murray, 34 Somerset 377 (1978), footnote 7.

as will enable her to carry it on. She cannot sue in forma pauperis, for she is not a pauper if she is the wife of a man who has property. To deny her the means of paying for process and professional aid is to deny her justice."

This rationale is repeated in later decisions. See: Powers Appeal, 120 Pa. 320, 328 (1888); Campana v. Campana, supra, 474; Rutherford v. Rutherford, 152 Pa. Superior Ct. 517, 529, 32 A. 2d 921 (1943); Kaufmann v. Kaufmann, 76 Pa. Superior Ct. 603, 605 (1921); DeRosa v. DeRosa, 60 D. & C. 2d 71, 75 (1972). But it reflects 19th century mores and cannot any longer be accepted as the basis for judicial action in divorce cases.

In the first place, an indigent spouse may now sue in divorce in forma pauperis, irrespective of the other spouse's resources. Pa.R.C.P. 1137 expressly authorizes such proceedings. Secondly, we cannot today subscribe to the proposition that money in hand is essential to obtaining good legal counsel. Whatever may have been the standards of the legal profession in earlier times, it has long since recognized its obligation to aid the poor in obtaining their legal rights. See Code of Professional Responsibility, Canon 2, EC 2-25. The divorce courts have acknowledged this. In Bowen v. Bowen, 124 Pa. Superior Ct. 544, 547, 189 Atl. 529 (1937), the court said: "It is well recognized that in divorce cases brought by persons of small means large counsel fees cannot be paid, and attorneys who press or defend such actions understand this and make due allowance therefor. The necessities of the case require it and the profession generally recognizes it."

Similarly, in Campana v. Campana, supra, 475, it is said:

"The divorce law in Pennsylvania began with the Act of September 19, 1785, 2 Sm.L. 343. And counsel down to the present time have recognized that whether one is entitled to a divorce is not to be made dependent wholly upon his financial status. Nor is either party required to submit to a decree for want of resources necessary to interposing an available defense. Lawyers in general have accommodated themselves as to their fees in divorce cases to the financial ability of the party obliged to pay even to the point of being illy paid for the services rendered."

In Baumgardner v. Baumgardner (No. 3), supra, 221, we denied a preliminary order for counsel fees prior to performance of the services as premature, saying: ". . . we are confident her counsel will attend to the duties of his employment whether or not respondent is or can be ultimately ordered to pay a counsel fee for petitioner."

This duty of the profession imposes upon it a heavy cost which society today recognizes cannot and should not be shouldered by the profession alone. EC2-25, supra, states in part:

"Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged. The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer, but the efforts of individual lawyers are often not enough to meet the need. Thus it has been necessary for the profession to institute additional programs to provide legal services. Accordingly, legal aid offices, lawyer referral services, and other related programs have been developed, and others will be developed, by the profession. Every

lawyer should support all proper efforts to meet this need for legal services."

In Somerset County, the members of our Bar have traditionally and willingly fulfilled these obligations. In addition, today we have a federally financed legal aid office, staffed with two competent attorneys, which serves without charge those parties in civil cases who meet established standards of indigency. The availability of that service diminishes but does not entirely eliminate the need for awards of counsel fees where the parties are represented by other counsel. The availability of free publicly financed legal aid does not preclude an indigent from securing private counsel, nor preclude private counsel from taking such employment; however, such private employment comes burdened with the ethical duty to work for little or no pay and with the risk that an award of counsel fees may not be made or may not provide full compensation. The same burdens and risks exist where the client is not indigent but is unable to afford the extensive or unusual services which the case may require.

Although the opinions of the courts, old and new, are fond of saying that the purpose of awarding counsel fees is to prevent a denial of justice: Graves v. Cole, 19 Pa. 171, 173 (1852); Ginsburg v. Ginsburg, 210 Pa. Superior Ct. 421, 423, 233 A. 2d 618 (1967); McCormick v. McCormick, supra, 253; and Brong v. Brong, supra, 226, and that lack of financial ability will not prevent an action or defense by an indigent party, Henderson v. Henderson, supra, 101, such awards effectively fulfill those purposes only in the limited number of cases where one of the parties has the wherewithal to

finance both of the parties. See Shuman v. Shuman, supra, 158. To do justice in this area, a great deal of dependence must be placed upon the ethically sensitive and socially responsible lawyer, and upon legal aid programs of which judicial allowance of counsel fees according to needs and abilities to pay is one.

In summary, we conceive the proper practice to be as follows:

(1) In absence of agreement by the parties, the court should no longer award counsel fees routinely without inquiry into all the relevant circumstances.

(2) Petitions for counsel fees may be filed at any time during the litigation, but will not be heard until the services for which the award is sought have been substantially performed. In the ordinary case, this will occur after the master's hearings have been completed. In lengthy or complex cases, successive petitions may be filed after a particular phase of the case has been completed, and may be adjudicated without awaiting completion of the master's hearings.

(3) If the nature of the conduct or misconduct of a party is to be considered, disposition of a petition for counsel fees must be deferred until adjudication of the divorce causes of action or until the essential facts are otherwise clear from the divorce record without the need for independent inquiry on the petition for counsel fees.

## ORDER

Now, March 23, 1978, the petition for counsel fees is denied.