## Millili v. Millili

*Eugene Bonner,* for plaintiff.
*Neil Hurowitz,* for defendant.

DAVENPORT, *J.*, March 10, 1982—

## FACTS

Dr. and Mrs. Millili were married six years. After three years and nine months they separated and currently are living apart. During the years that they lived together, Mrs. Millili was the principal breadwinner while her husband attended medical school full-time. Dr. Millili currently is in a residency program at Graduate Hospital. Mrs. Millili works as a medical technician and part-time teacher.

In August 1980, Dr. Millili filed for divorce and Mrs. Millili counterclaimed. A recommendation for divorce was made by the Master under Sec. 201(c) of the Divorce Code. Mrs. Millili petitioned for payment of interim attorney's fees, court costs, appraisal costs and other incidental costs in October 1981. A hearing was held January 11, 1982 following which interim counsel fees were awarded in amount of $375 with appraisal costs for the medical degree to be taken under consideration.

## ISSUES

Is Mrs. Millili entitled to advance costs for the valuation of Dr. Millili's medical degree? YES.

A. To what property, if any, is she entitled? All property acquired during the marriage.

B. Specifically, is Dr. Millili's medical degree marital property? NO.

## DISCUSSION

The initial inquiry has to be, "what is property?" Today in divorce law there is a split interpretation as to what is property. On the one side is the traditional, conservative approach while on the other side there is a liberal and expansive approach.

Traditionally, property is "[o]wnership; the unrestricted and exclusive right to a thing, the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude every one else from interfering with it." Blacks Law Dictionary 1382 (4th Ed. 1968). This concept of property encompasses characteristics of exchange, transfer and alienability. The court in In Re Marriage of Graham, 194 Colo. 429, 574 P. 2d 75 (1978) expresses the view that a medical degree:

"[It] does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term."

The right to practice a profession is a property right with constitutional protection (Schware v. Board of Bar Examiners, 353 U.S. 232 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957), but it is not a vested right to practice [medicine]. Because of the possibility of injury or harm resulting to the general public from incompetent, unqualified persons, reasonable restrictions are necessary: Reisinger v. Com., State Board of Med. Ed., 41 Pa. Commw. 553, 399 A. 2d 1160, 1164 (1979).

The second view of property is an expanding and expansive concept. The word is also commonly used to denote everything which is subject to ownership,

corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal: Black's Law Dictionary 1382 (4th Ed. 1968).

Interests represented by papers such as deeds, bonds, and stock have been categorized as property. See, In re Lewis Estate, 407 Pa. 518, 180 A. 2d 919 (1962). Generally, equitable distribution states include among marital property the right to receive money, such as personal injury benefits, and workers' compensation benefits: DiTolvo v. DiTolvo, 131 N.J. Super. 72 (App. Div. 1974), Hughes v. Hughes, 132 N.J. Super. 559 (Ch. Div. 1975). Under certain circumstances, a pension has been held subject to equitable distribution. In Blitt v. Blitt, ＿＿ N.J. Super. ＿＿, 353 A. 2d 1944 (1976) the portion of the pension plan over which the employee had full control was subject to division.

More and more cases are dealing with the many facets of property which make up "all property" acquired during the marriage. One of these facets concerns the right of one of the spouses to receive monies in the future. This right can be in form of a private pension, profit sharing plan, stock option, military retirement pay, other government plans and even social security: Kornfeld, L. "Special Report: Equitable Distribution," Equitable Distribution Reporter (1980) at 10. The trend is that these benefits, particularly where there is an ascertainable value which is vested, are divisible property.

Mrs. Millili, too, asserts that it is the increase in future earning capacity made possible by the medical degree and license (both of which were obtained with the aid of her effort), which constitutes divisible property. The assertion is that Dr. Millili is currently reaping the rewards of his education and that a reasonable value can be ascertained for the property (i.e. medical degree) by way of an appraisal.

## A. TO WHAT PROPERTY IS MRS. MILLILI ENTITLED?

Section 401(e) of Pa. Divorce Code defines marital property as "all property acquired by either party during the marriage" with certain exceptions. In effect, should Mrs. Millili succeed in arguing that her husband's educational degree is property acquired during the marriage, then it would be marital property subject to equitable distribution. Additionally, Pennsylvania raises a presumption of marital property in §401(f) which is overcome only in limited circumstances as delineated in §401(e) exceptions. Therefore, all property acquired during marriage would be subject to equitable distribution.

## B. IS DR. MILLILI'S DEGREE MARITAL PROPERTY?

Pennsylvania Courts have not addressed this issue, thus it is necessary to discuss cases by other jurisdictions.

New Jersey is the only jurisdiction which has resolved the issue in favor of the non-degree holder spouse in the attempt to bring the degree under the umbrella of marital property.

Even in those cases which conclude that the educational degree may be subject to equitable distribution, they nonetheless have employed divergent theories so as to reach a fair and equitable result. The dominant theory is one of restitution so as to recompense the spouse for monies expended during the period of the other spouse's educational process: Moss v. Moss, 264 N.W. 2d 97 (Mich., Ct. App. 1978); In re the Marriage of Cropp, 48 U. S. L. W. 2286 (Minn. D. Ct. 1979). In Mahoney v. Mahoney, 175 N.J. Super. 443, 447 (Chan. Div. 1980), the court found that the education and de-

gree of husband was a property right subject to equitable offset upon dissolution of the marriage. Finally, the court in In re Marriage of Horstmann, 263 N.W. 2d 885 (Iowa 1978) applied a cost approach so as to give the working spouse a return on her monetary investment in her husband's education.

In Lynn v. Lynn, _____ N.J. Super. _____, (Chan. Div. 1980), the court dealt directly with the issue of whether a professional degree is property. Its finding was that both the degree and the license acquired during the marriage are each property and subject to division. In so finding, the court rejected traditional concepts of property. Rather than apply one of the divergent theories so as to achieve an equitable result, the court dealt with the issue head on and stated a general principle of law. However, in a later case, Mahoney v. Mahoney, _____ N.J. Super. _____ (Feb. 9, 1982), an opposite conclusion is reached.

While other cases have found the professional degree to be subject to division, Inman v. Inman, 578 S.W. 2d 266 (Ky. 1979), few have asserted such a bold principle. In fact, most courts in deciding the same issue have held that a professional degree is not property and, therefore, not subject to distribution upon termination of the marriage. In re Marriage of McManama, 399 N.E. 2d 371 (Ind. 1980); In re Marriage of Aufmath, 89 Cal. App. 3d 446, 152 Cal. Rptr. 668 (1979); In re Marriage of Graham, supra; Moss v. Moss, supra; Stern v. Stern, 66 N.J. 340, 331 A. 2d 257 (1975); Hubbard v. Hubbard, 603 P. 2d 747 (Okla. 1979); DeWitt v. DeWitt, 296 N.W. 2d 761 (Wisc. 1980); Frausto v. Frausto, 611 S.W. 2d 656 (Tx. 1980).

California takes the view that "the acquisition of an education, degree and license to practice are

the result of a process . . . for many years and are the cumulative product of those many years of previous study and training. Therefore it seems that even where an educational degree . . . (is) acquired during a marriage, that the process that culminated in such an achievement was commenced long before the date of marriage. Therefore, even if they could constitute "property" for some purposes, it is an item of "property" that the possessor of same has brought into the marriage. It cannot be something that was totally acquired during marriage." In Re Sullivan, Calif. Ct. App. (4th Dist. January 8, 1982).

Effectively, this approach would not allow the medical degree to be classified as a marital asset since it was not wholly acquired during the marriage. The degree is treated as the separate property of the holder-spouse. California does, however, treat the increase of appreciation in value of the separate property as marital property.

Though not a community property state, Pennsylvania too has expressed an intention that any increase in value of separate property be marital property. See: §401(e)(1) and (3). Section 401(e) defines marital property with certain exceptions. Everything which does not fall within those exceptions is marital property or conversely those exceptions are separate property. Since the degree cannot be something wholly acquired during the marriage, it would be separate property. While not specifically categorized in the exceptions, uniformity would dictate that any increase in value of the degree would also be marital property.

It seems clear that whether under Pennsylvania law and the traditional concept of property which would exclude the degree or the California approach of calling it separate property because it was not

totally acquired during marriage, the medical degree is not itself "marital property."

However, the future earnings made possible by the degree may be subject to equitable distribution where the court finds that the increase in income potential of the degree holder is due to contributions of working spouse. Section 501 of the Divorce Code specifically allows both the spouse's contributions and the earning capacity of the parties to be factors in alimony. These are proper considerations because in the final analysis the issue is whether the property division and the alimony award taken together are equitable.

Issue: IS MRS. MILLILI ENTITLED TO ADVANCE COSTS FOR THE VALUATION OF HER HUSBAND'S MEDICAL DEGREE?

Generally, the "purpose of awarding counsel fees and expenses to the wife, whether plaintiff or defendant, is to make certain that financial ability will not prevent her from making a defense, or, in a proper case from bringing her action." Henderson v. Henderson, 224 Pa. Super. 182, 303 A. 2d 843, 845 (1973).

To insure that the wife's rights were not denied or prejudiced, the courts routinely allowed the wife suit money. This suit money was advanced for services reasonable and necessary to the bringing of the action. The services of accountants and experts are proper expenditures: Lynn v. Lynn, 76 Pa. Super. 440, 443 (1921).

Even where the husband and wife were on approximately the same economic plane, the court did not abuse its discretion by requiring the husband to pay part of his wife's counsel fees and expenses: McCormick v. McCormick, 202 Pa. Super. 250, 195 A. 2d 851 (1963).

Today in Pennsylvania the routine allowance to

wives of counsel fees and expenses is tempered by the Equal Rights Amendment to the Pennsylvania Constitution, Article 1, §28 which was adopted in May, 1971. In proper cases, the court may grant reasonable expenses upon consideration of the respective abilities of the parties to pay. Such allowances are not mandatory but rest within sound discretion of the court and will not be interfered with on appeal absent a manifest abuse of discretion: Oswald v. Oswald, 263 Pa. Super 85, 397 A. 2d 7 (1979).

In King v. King, 68 D. & C. 2d 367 (1975), a case subsequent to the Equal Rights Amendment, the court ordered the husband (who earned $10,000 more per year than the wife) to pay a portion of her counsel fees and expenses even though the wife was self-supporting. The court found that the husband's financial situation was such that he should pay something toward the wife's expenses.

A wife's petition for alimony pendente lite was denied where she and her husband were on the same economic plane, but counsel fees and costs were allowed because the husband had forced his wife into an adversary proceeding to defend against his action for divorce: Christ v. Christ, 75 D. & C. 2d 499, 501 (1976). However, the Somerset County Court in Weimer v. Weimer, 7 D. & C. 3d 1 (1978) rejects this basis for allowing counsel fees and costs. The merits of the action are irrelevant on the issue of counsel fees and cost. "What is at issue is the right of the parties, whether plaintiff or defendant, to have as fair and equal an opportunity as possible to litigate their contentions, right or wrong." Weimer, supra at 8.

Mrs. Millili is entitled to a fair and equal opportunity to litigate her contention that her husband's medical degree is subject to equitable distribution.

This litigation necessarily involves valuation of the medical degree particularly where as here (1) the valuation is based on the increased earning capacity of the degree holder, and (2) the appreciation in value is asserted as a divisible asset. Interestingly, the courts in Inman v. Inman, supra and In Re Marriage of Horstmann, supra, were not confronted with the issue of appraisal costs since the valuation of the degree was limited to the extent of the supporting spouse's monetary investment plus interest.

In Hubbard v. Hubbard, supra, an alternative method for valuation of the degree was utilized. In that case, the petitioner called as a witness a medical doctor from the geographic area who specialized in same area of medicine as husband. The doctor testified as to the projected future earnings of the husband based on his own experience and background in addition to available publications on medical economics. This testimony was held properly admitted on appeal.

Such testimony would clearly be less costly than the $1,500 required by the financial analyst in this case. With substantiation of the accuracy of the doctor's projections, this approach would seem to be appropriate. However, it appears that this approach is not without evidentiary problems especially in regard to testimony based on financial publications.

The costs for accountants and experts are properly to be considered in awarding costs: Lynn v. Lynn, supra at 443. Insofar as the future earnings of Dr. Millili are relevant to a determination of property distribution and alimony, and the nature and extent of services to be performed, an award of a portion of the appraisal costs is proper.

In reflection of King v. King, supra, Mrs. Millili

although self-supporting is entitled to a portion of the appraisal costs. Her income would appear to be in the range of $13,000—$15,000 while Dr. Millili earns $22,000—$25,000 with no one to support but himself. The appraisal is necessary in protection of Mrs. Millili's interest and is a rather sizeable expense to be absorbed by a wife earning about $14,000. The amount of the award is in the discretion of the court.

## CONCLUSIONS

1. Mrs. Millili is entitled* to an advance on some portion of the appraisal costs incurred as result of the valuation of husband's degree.

A. She is entitled to have all property acquired by either party during the marriage subjected to equitable distribution.

B. Dr. Millili's medical degree is not marital property, per se, but the increase in the ability to earn a greater income is a factor to be considered in establishing an appropriate amount of alimony pendente lite.

## ORDER

And now, March 10, 1982, the above matter having come before the court on January 11, 1982 on petitioner Lorna Ann Razzi Millili's request for pay-

---

*Mr. Bonner, attorney for Dr. Millili, argues that Mrs. Millili is not presently entitled to any advance costs for the appraisal in as much as she has not complied with Pa. R.C.P. 1920.33 requiring an inventory and appraisal of marital property. The court has spoken with Mr. Hurowitz, attorney for Mrs. Millili, and he has indicated that he will comply with the rule. An inventory should be forthcoming. As to the premature filing of this petition, an award is proper when it is clear what services will be performed in the future: Weimer, supra at 10.

ment of interim attorney's fees, court costs, appraisal costs and other incidental costs, after a conference in chambers and with the agreement of the parties, the court allowed interim counsel fees, etc. in the amount of $375, but reserved its decision on the request for advance appraisal costs for respondent's medical degree, after further research, the court hereby awards costs to petitioner in the amount of $500 to be applied toward such appraisal costs.